GEORGE F. BLIVEN, *Ex. vs.* ALONZO E. BORDEN *et als.*

JUNE 6, 1936.

PRESENT: Flynn, C. J., Capotosto, Baker, and Condon, JJ.

284

BAKER, J. This is a bill in equity brought by the complainant as executor under the will of John L. Borden, late of Portsmouth, for the construction of certain portions of such will, and for instructions. All other parties in interest are properly before the court as respondents, necessary representatives of minors have been appointed and the pleadings closed. Testimony was taken pursuant to a decree entered by the superior court, and the cause then being ready in that court for hearing for the entry of final decree, it was certified to this court for determination, in accordance with the provisions of general laws 1923, chapter 339, sec. 35.

The testator died August 21, 1933, leaving the above-mentioned will which was dated January 2, 1933, and was admitted to probate in Portsmouth, September 25, 1933. Added to the will were two codicils, one bearing the same date as the instrument itself, and the other the date of March 6, 1933.

The bill alleges that certain questions have arisen concerning the first, seventh and ninth paragraphs of the will and the second codicil.

The first five of these questions have to do with the validity and effect of the bequest of $25,000 in trust for

the maintenance of the homestead farm, and the gift over of such sum for the benefit of the poor and needy of the town of Portsmouth, as set out in the first paragraph. The next question relates to the bequest of $50,000 mentioned in the seventh paragraph, and the last three questions concern the disposition of the testator's tangible personal property, as referred to in the ninth paragraph and in the second codicil.

The material portions of the first paragraph of the will are as follows:

"First: I give, devise and bequeath my Homestead Farm, where I *I* now reside with all the buildings and improvements thereon, together with *with* the Lake Land, now called the Dennis Place with the buildings thereon, to Alonzo E. Borden, In Trust, however, for the use and benefit of his grandson, Richard C. Borden, to come into his possession when he attains the age of twenty-five years, Further: I give and bequeath to Alonzo E. Borden, Trustee as aforesaid; the sum of twenty-five thousand dollars, ($25,000), to be safely invested and the income to be used in the maintenance of said Homestead Farm; If said Homestead Farm shall be conveyed or allowed to pass out of the family name of "Borden," by the said trustee or devisee, then in that event, the said maintenance Fund of $25,000, shall cease, and become a Fund, the income to be used under the direction of the Town Council of the Town of Portsmouth and their successors in office,

for the comfort and well being of the poor and needy people of said Town of Portsmouth."

In construing a will, unless a contrary intent clearly appears, language employed by a testator must be given its natural and ordinary meaning; and his general intent must be gathered from the will or clause as a whole, and not from any single expression apart from the context. Further, the intent must be ascertained only from what is actually expressed in the will itself and from implications necessarily following from the language employed, but conjecture is not permitted. Facts and circumstances surrounding the testator at the time his will was executed, as they appear of record, may be considered by the court as an aid in discovering his intent, and when such intent is once determined, the court should, if possible, give it effect. *Matteson* v. *Brown*, 33 R. I. 339; *Metcalf* v. *Gladding*, 35 R. I. 395; *Rhode Island Hospital Trust Co.* v. *Davis*, 41 R. I. 386; *Thurber* v. *Thurber*, 43 R. I. 504; *Rhode Island Hospital Trust Co.* v. *Egan*, 52 R. I. 384.

Certain pertinent facts appear from the testimony taken. The farm involved herein contains about thirty-two acres. On it are two houses, one a large building of twenty-one rooms, one portion having three and the remainder four stories, with steam heat for the first and second floors, and the other a cottage of about eight rooms. In addition, the farm has a large three-story barn which needs certain repairs and improvements to make it available for dairy purposes, another smaller barn, a hothouse, and several sheds and outbuildings. At the time the will was executed, Richard C. Borden, who comes into possession of the farm when he reaches the age of twenty five, was fourteen. He is the grandson of Alonzo E. Borden, now more than seventy years old, a distant relative of the testator, and named as trustee in the first paragraph of the will. Richard is an orphan, his parents having predeceased the testator by several years. Soon after the

death of Richard's father, the boy went with his mother to live with her family in Illinois, and after her death he remained there with his maternal aunt and grandmother and is now attending school. He usually spends the summer in Portsmouth with his grandfather, Alonzo E. Borden. Richard's only estate consists of a small bank account of less than $100, and a one-half interest in a fund of $3,800 derived from life insurance. The testator had at times financially assisted Richard, his brother and his mother, following the death of the father.

The first paragraph of the will provides for two separate trusts. The first concerns the farm itself, and all parties hereto are agreed that under this trust Richard received at the death of the testator a vested equitable estate in fee, immediately alienable and transmittable, followed by complete legal title and enjoyment when he becomes twenty-five years of age, at which time this trust terminates and he receives full possession of the farm. An estate will be construed as vested when the futurity connected therewith relates only to the time of possession and not to the substance of the gift itself as a condition precedent, because the vesting of estates is favored. *Rhode Island Hospital Trust Co.* v. *Noyes*, 26 R. I. 323. The second is of a fund, the income of which is to be used for the maintenance of the farm, with a gift over to a charitable purpose upon the happening of a certain named contingency. The questions in the bill of complaint dealing with the scope and effect of this second trust are difficult to answer, largely because the testator has used language in relation thereto which is not sufficient to make his entire meaning and intent clear, but which, nevertheless, raises issues involving the proper application of recognized legal principles to this portion of the will.

The guardian *ad litem* for Richard maintains, first, that the bequest of $25,000 constitutes an outright gift of that amount to the minor to come into his possession when he reaches the age of twenty-five, and that the gift over is

illegal because it rests upon a contingency which amounts to an unreasonable restraint on alienation, and also because the language employed in this connection is precatory only; and second, that if not an absolute gift, then that Richard takes a vested interest in the fund, subject to be divested only if he conveys or allows the farm to pass out of the family name of "Borden." The guardian *ad litem* further argues that if a maintenance trust of $25,000 is created by the language used in the will, for a period longer than allowed by the rule against perpetuities, then such trust should be held valid, at least for the life of Richard. The residuary legatee, the Newport Hospital, contends that the bequest of $25,000 to establish the so-called maintenance trust for the homestead farm is invalid, because it violates the rule against perpetuities by reason of the indefinite period of its duration, and that the gift over for the use of the poor of the town of Portsmouth, although charitable in nature, is also void in that it follows an invalid private trust, and that, therefore, this bequest lapses and falls into the residue. The attorney general takes the position that Richard received on the death of the testator a vested equitable interest in the fund in question, subject to be divested only for the reasons hereinbefore set out, and that, therefore, the charitable gift over is good in that it must vest, if at all, within a life in being. The town of Portsmouth urges that the testator's intent was that the maintenance fund should continue only up to the death of Richard, and then adopts the same view as that of the attorney general in relation to the gift over for charitable uses.

We do not agree with the contention of the guardian *ad litem* for Richard that the intention of the testator, as gathered from the clause creating the maintenance trust, was to make an absolute and outright gift of the $25,000 to Richard, to come into his possession when he reached the age of twenty-five, in like manner as the devise of the farm itself. The fact that this fund was left to "Alonzo E.

Borden, Trustee as aforesaid" is not enough to show that the intention was that it be held on the same trusts as the real estate. In our judgment, the words "Trustee as aforesaid" are words of identification only. The construction pressed by the guardian *ad litem* requires that no effect be given to the remainder of the paragraph dealing with the contingency upon which the gift over to charity would become operative.

To support his position he urges that the clause, providing that if the farm shall be conveyed or allowed to pass out of the family name of "Borden" by the trustee or devisee, then the gift over to certain charitable uses shall take effect, is an unreasonable restraint on alienation and therefore is void, together with the gift over, citing *Manierre* v. *Welling*, 32 R. I. 104, or that the language employed is not mandatory but precatory only, and so may be disregarded. In our opinion the above case has no bearing on the questions now before us. No restraint is imposed on the alienation of the farm; at most the trust fund might operate as an inducement to Richard to keep the property. The trusts of the farm and of the maintenance fund are distinct, and Richard has no direct control over the fund itself. The will provides for a gift over of one property interest in case of an alienation, in a certain way, of another property interest. A gift over of property upon the alienation, by the first taker, of even the same property is not always subject to the rule against restraints on alienation. An unreasonable restraint on alienation is brought about by a gift of absolute ownership in property, followed by such a condition as takes away incidents of that ownership. The guardian *ad litem* for Richard, in seeking to prove the gift over invalid as such a restraint on alienation, assumes as established that Richard has under the terms of the will an absolute title in the maintenance fund, a holding which we have found is not correct. In addition, it is our judgment that the language used in relation to the gift over is mandatory and not precatory or exhortative, and hence must be heeded.

The case of *Moran* v. *Cornell*, 49 R. I. 308, relied on by the guardian *ad litem*, is plainly distinguishable from the case at bar. In that case, a testator devised a farm to his cousin for life and then to the latter's son in fee, expressing, among other things, a hope that the farm would not be sold or mortgaged. The testator also bequeathed to such cousin the sum of $20,000, the income only to be used during his life in the expense of and improvements on the farm, and upon the death of the cousin such sum was left to his son, with the same conditions. The court found that the bequest for maintenance was not void as a perpetuity, holding that the cousin's son upon the death of his father took an absolute estate in the $20,000, as a trust could not exist where the same person possessed both the legal and the beneficial interest. The fact that the language used in connection with the retention of the farm was clearly precatory was not emphasized by the court. In the instant cause we have in the maintenance trust no such joining of the legal and the equitable interest in the same person. Richard is to receive the farm when he becomes twenty five, actual possession and legal title meantime being withheld, under the trust, and Alonzo holds the trust fund. This lack of identity of interests is further shown by the fact that the testator herein provided for a gift over of the maintenance fund to a charitable use upon the happening of a certain contingency. There was no such gift over in the case of *Moran* v. *Cornell*, *supra*. It is clear that John L. Borden intended an active trust, not one merely passive which would at once pass the full legal interest to the beneficiary. *Guild* v. *Allen*, 28 R. I. 430.

As to the rule against perpetuities, it is generally accepted that, apart from one recognized exception, the rule is not one of construction, but is a rule of law, and is to be strictly applied to the portion of the will before the court, after such portion has been construed as though the rule did not exist. Gray on Perpetuities, (3d. ed.) §§ 629, 633. See *Colt* v. *Industrial Trust Co.*, 50 R. I. 242. Properly speak-

ing, the rule is concerned only with the time of the vesting of an interest, and such interest is not good unless it must vest, if at all, within a life or lives in being and twenty-one years, with an allowance for the period of gestation. If it must so vest, the fact that it may end beyond the time indicated by the rule does not render it invalid. Gray on Perpetuities, (3d. ed.) §§ 201, 232. However, it has been held that certain private trusts which must vest, if at all, within the limit of the rule are nevertheless void as perpetuities when their duration is indefinite and property is tied up and out of commerce for a period which can not be ascertained from the instrument itself. In these circumstances, the term "perpetuity" has been used in a non-technical sense as meaning a continuing interest or one not alienable. A trust of a private nature to be valid requires a definite *cestui*, and the above holdings are in most cases supportable on the ground that the trusts involved are lacking in that regard. 48 C. J. 985; Gray on Perpetuities, (3d. ed.) §§ 894, 898.

On this general theory this court has held invalid as gifts in perpetuity, private trusts of indefinite duration for the care and maintenance of graves, burial lots and the like, not coming within the provisions of the statute covering such bequests. *Kelly* v. *Nichols*, 17 R. I. 306; *Sherman* v. *Baker*, 20 R. I. 446; *Shippee* v. *Industrial Trust Co.*, 43 R. I. 115. In *Williams* v. *Herrick*, 19 R. I. 197, a gift to trustees of all testator's estate for the erection of a block to be forever known by a certain name and to be managed by them in the interests of his heirs, no limit of time being placed on the trust, and no vesting of any interest in any person being ascertainable, was held void as a perpetuity.

The contention of the residuary legatee herein is that in creating the maintenance trust now before us, the testator had in mind no particular beneficiary or beneficiaries, but only the maintenance of the homestead farm itself as a memorial to the Borden name, and that, therefore, such trust is a private trust of uncertain limitation without a

*cestui*, and so invalid as a perpetuity. Assuming this construction, cases cited by the residuary legatee tend to support its position. In *Thorp* v. *Lund*, 227 Mass. 474, where a will provided that the income of a trust fund be used "for the purpose of preserving, maintaining and making improvements upon Lysoen, Norway,—the home of my father Ole Bull—as a Memorial to his memory," it was decided that such a bequest was a nullity, being an attempt to create a perpetual trust for a private use. In *Smith* v. *Heyward*, 115 S. C. 145, a testatrix left one half of her residuary estate in trust to maintain a large and historic plantation comprising house, gardens and her family burial plot. No limitation was placed upon the duration of the trust, and the court held that the bequest was too indefinite to be enforced as a private trust, and was also in violation of the rule against perpetuities. The residuary legatee relies on *Kennedy* v. *Kennedy*, (1914) A. C. 215. There the testator devised in fee to a son a dwelling house, with the proviso that two granddaughters should be entitled to live in the house till they married. After certain devises and bequests, the residue was left to trustees to be used in their discretion in maintaining the house and premises. The trustees were given power to make sales of real estate, and in their discretion to devote the proceeds "to maintain my said residence in the manner in which it has been heretofore maintained." If it became necessary to sell the residence, the residuary estate then remaining was to be divided equally among certain persons. The court found the trust void as offending against the perpetuity rule, saying: "It is to be observed, however, that the trust is not to keep up a home for these three persons, but to keep up and maintain a dwelling-house as kept up and maintained before the testator's death. It is a trust which, if valid, would enure for the benefit of all persons for the time being interested in the dwelling-house, and is by the testator himself contemplated as coming to an end only if the dwelling-house be sold."

In passing upon the maintenance trust before us, which is clearly for a private purpose, we must determine whether the testator's intention was merely the upkeep of the farm as a Borden memorial, with no desire to benefit any particular person, and hence, as the residuary legatee urges, making it open to the objection that the trust· has no definite *cestui*, and may continue in perpetuity; or whether there was an intention that the fund be for the primary benefit of a particular person or persons, who would then become the beneficiary or beneficiaries of the trust and be in a position to enforce it. It is the claim of the guardian *ad litem* for Richard that he is such a person. There is also the further question of whether or not, under the language used relating to the maintenance trust, anything is found which fairly limits the duration of the trust.

Upon consideration, we are of the opinion that this trust, as set out in the first paragraph of John L. Borden's will, was not intended by him to provide merely for the care and upkeep of the farm as a Borden memorial, but was created to benefit Richard, individually and through his trustee, and, therefore, that the trust is not without a *cestui*. The use of the word "Homestead" as applied to the farm does not support the contention that a Borden memorial was in· the mind of the testator. Other realty devised in the will was designated by name, such as "Lake Land now called the Dennis Place," "Sanford Land," "Swamp Land," "Neck Land," and "Thomas Place." It is clear that the term "Homestead" was merely descriptive of the particular farm devised and to which the trust fund was to apply, as distinguished from other farm property belonging to the testator, and was thus named as being the farm occupied by him. Further, there is no evidence that this farm had any historical or family significance.

In establishing the trust fund in question, the testator did not expressly provide that it should continue as long as the farm remained in the family name of "Borden," nor did he use any words such as "always" or "forever," implying

an unlimited duration of the trust. On the contrary, after setting up the trust he at once named a contingency upon which the trust was to terminate and a gift over to charity was to take effect, namely, if the farm be conveyed or allowed to pass out of the family name of "Borden" by the trustee or the devisee, the latter of whom we construe to mean Richard. It may be noted, therefore, that the power to terminate the maintenance trust was placed by the testator solely in the hands of the first takers of the farm. Finally, in our judgment it is significant that this trust was provided for immediately following the devise of the realty to a trustee for Richard, who received a vested interest therein, and who was to come into full possession when he became twenty-five years of age. Considering the size, nature and cost of maintenance of the property thus devised and the fact that Richard was an orphan, a minor and without adequate means to keep up the farm, the devise in question, without the accompanying maintenance fund, might well be a burden to the trustee and to Richard. We find that, with these facts and circumstances existing when the will was made, the language used by the testator therein reveals an intention to benefit Richard personally by the establishing of the maintenance trust, whether the latter held the farm directly or through a trustee.

It is our opinion that the instant cause resembles in principle the case of *In re Cassel*, L. R. Ch. Div. (1926) 358. There a testator bequeathed a leasehold interest of seventy years in property known as "Brook House" and contents, together with stables, to trustees to hold for the benefit of certain designated members of one branch of his family, all of these interests vesting properly within the rule against perpetuities. Subject to these trusts he created similar successive trusts in favor of members of other branches of his family, each of the interests thus provided for, to vest, if at all, within the limit of the rule. He then directed that his trustees should always pay out of the income of his residuary personal estate all expenses of maintaining the

leasehold and its contents including rent, rates, taxes, insurance against fire and burglary and the cost of keeping the property in a proper state of preservation. He also expressed in the will a wish that "Brook House" and contents should never be sold by any person entitled thereto under his will, and requested that each successive holder should observe this wish. If all trusts created under the will failed, then there was an ultimate trust over of "Brook House" and contents for a charity.

It was urged that the trust for maintenance was void because in violation of the rule against perpetuities, but the court, in the construction it placed upon the will, held otherwise, using the following language: "It was contended that nothing was to be found limiting the duration of the clause's operation in any way (except the duration of the leases), and that accordingly I was not entitled to read into it any such limitation. In my opinion I am bound to give the clause a common-sense interpretation, if the language used by the testator and the whole context of the will admits of it. Apart from charitable bequests a testator does not intend to give benefits to persons unknown to him or to persons with whom he is not connected either by ties of friendship or relationship; and to me it is inconceivable that the testator intended by this clause to confer a benefit (and a substantial benefit) on a person who would probably be a total stranger to him (or who indeed might conceivably have been a bitter enemy) just because that person happened to become the owner of one or other of the leases.

"The clause in question comes immediately after the completion of what I may call the trusts of Brook House and contents in favour of relations of the testator. . . . On consideration it appears to me that this is a clause the object of which is to relieve the particular relation of the testator described in the will, who for the time being is the beneficial owner under the will of the leases, from burdens which he or she might be or feel bound to bear.

"Thus construed the clause charges the income of the residuary personal estate, during (a) the term of the leases and (b) such time as the leases remain the property of a beneficiary deriving his or her title directly under the will, with the payment of an annual sum in relief and for the personal benefit of such beneficiary; the annual sum varying in amount according to certain ascertainable facts." The court then distinguished the case of *Kennedy* v. *Kennedy*, *supra*, saying: ". . . but the clue to that decision appears to be that upon the true construction of Kennedy's will the trust there in question was held to be a discretionary trust not merely for the personal benefit of the persons to whom the testator had given a beneficial interest in the house, but for the benefit of all persons for the time being interested in the house until the sale thereof. Upon that construction it is evident that new interests might well arise at a point of time beyond the perpetuity period.

"Upon the true construction of Sir Ernest Cassel's will, the clause there contained is in my opinion not a discretionary trust but an imperative trust which is only operative for the personal benefit and relief of each of the testator's relations referred to in the dispositions of Brook House and contents, so long as she or he continues to be the beneficial owner of the leases under the will." In the *Kennedy* case, *supra*, the testator's intent clearly appeared when he provided that his residence was to be maintained in the manner in which it heretofore had been maintained. The upkeep of the house for whoever might be interested, rather than the benefit of any particular persons, was the evident purpose.

While the will in the instant cause was not carefully drawn, whereas that in the *Cassel* case, *supra*, was very complete, we are of the opinion that the reasoning of the court in that case in relation to the maintenance trust can well be applied to the construction of the trust of the same general type in the will now before us. In our judgment, in so far as this trust is concerned, the present cause more

nearly resembles *In re Cassel, supra,* than it does *Kennedy v. Kennedy, supra.*

The residuary legatee claims, however, that it was the testator's intent that this trust continue at least as long as the farm was owned by one with the family name of "Borden," that the testator expressed his entire intent in the will and that nothing is omitted therefrom, with the result that the maintenance trust is under certain conditions without definite limitation and so is *ab initio* a nullity. We are unable to agree with these contentions. The testator provided for the disposition of the trust fund upon the happening of a certain contingency, which must happen, if at all, during the lifetime of the equitable devisee, and then failed entirely to make any reference to his desires as to the fund afterwards if the contingency did not occur. He made no provision as to what should happen if the converse of such contingency should take place during the lifetime of the equitable devisee, a situation to which he would naturally have given some consideration. If he was interested in having the farm remain indefinitely in the family name of "Borden," and having it maintained as a family memorial, after the death of the equitable devisee, or after the latter individually or by his trustee had parted with the title, he would naturally have expressly provided for its maintenance out of the income of the trust fund so long, and only so long, as the farm remained in the family name, and then have provided that the trust fund should be used for some other purpose if the farm, under such circumstances, ever ceased to be in the family name. That he made no such provision, indicates that he was not concerned with what happened to the farm after the death of the equitable devisee, or after the latter individually or by his trustee no longer held it.

Possibly an inference can be drawn that it was the testator's intention that if the farm was conveyed or allowed to pass to one of the family name of "Borden" by the trustee or devisee, then the maintenance trust was to

continue, even though such person with the family name of "Borden" might not be known to the testator or might come into being hereafter. In our judgment such an inference is not a necessary one and therefore we are not required to read it into the will. In this connection, the following language from *Wilkinson* v. *Adam*, 1 Ve. & B. 422, at page 466, is quoted with approval in *Matteson* v. *Brown*, *supra*, at page 351: "That in construing a will conjecture must not be taken for implication, but necessary implication means, not natural necessity, but so strong a probability of intention, that an intention contrary to that which is imputed to the testator, cannot be supposed." We have heretofore indicated the facts and circumstances surrounding the testator when he made his will, and we have found that the purpose of this trust fund was to assist personally a designated individual rather than benefit the property itself. It is possible that the farm might pass immediately from the person having the family name of "Borden" to a total stranger. As was noted in the *Cassel* case, *supra*, it is hardly reasonable or conceivable to suppose that the testator would intend the maintenance trust to continue under such circumstances.

We find, therefore, that such trust is not of unlimited or uncertain duration. It is limited, first, by the express language of the will providing for a gift over of the fund if the homestead farm is conveyed or allowed to pass out of the family name of "Borden" by the trustee or devisee, and second by the fact that, if such contingency does not take place, then the testator's intent as to such trust fund cannot be ascertained either by necessary implication or directly from his will, because of his failure to provide specifically therein for such a happening. Whatever further purpose, if any, he may have had concerning the trust fund, we are not concerned with, because there is no expression in the will sufficiently clear and definite to reveal it.

In our construction of the first paragraph of the will, the only designated or named beneficiary of the maintenance

trust taking directly under the will is Richard, who takes individually and through his trustee. We hold, therefore, that such trust is valid for the personal benefit of Richard, as one taking directly under the will, as long as either he or his trustee retains thereunder the title in fee to the homestead farm devised under the first paragraph of that instrument. Such trust is not void as violating the rule against perpetuities. It begins to operate at once for the benefit of a person in being, and continues only so long as we have just indicated. If the trust is terminated under the contingency named in the will by the homestead farm being conveyed or allowed to pass out of the family name of "Borden" by the trustee or by Richard, the scope and meaning of which last-mentioned phrase we are not passing upon herein, then we are of the opinion that the gift over to charitable uses for the poor and needy of the town of Portsmouth would take effect. Such gift would constitute a charitable trust for the purpose above named, following a valid private trust, and from the language of the will relating thereto must vest, if at all, within the time permitted by the rule against perpetuities, and hence is good. If, however, the farm is not conveyed or allowed to pass out of the family name of "Borden" by the trustee or by Richard, thereby causing the termination of the maintenance trust by reason of the neglect of the testator to indicate further beneficiaries or to provide for the disposal of such trust fund upon the happening of that contingency, as we have heretofore determined, then in our judgment the bequest of $25,000, comprising the maintenance trust, lapses and falls into the residue of the testator's estate, and passes under the residuary clause of the will to the Newport Hospital as residuary legatee. *Peckham* v. *Newton*, 15 R. I. 321; *Woodward* v. *Congdon*, 34 R. I. 316.

We do not accept the contention of the guardian *ad litem* for Richard that the latter takes under the will a vested interest in the bequest of $25,000 in question, subject to be divested only if the farm is conveyed or allowed to pass out

of the family name of "Borden" by the trustee or himself, and therefore, that if the above-mentioned contingency does not take place, then such fund becomes part of Richard's estate, free of the trust. In the instant cause, the provisions of the will relating to the maintenance trust are unusual. In our judgment, the general rule that interests will, if possible, be construed as vested is not applicable to the circumstances or the instrument before us. We are not confronted with the ordinary situation where the coming into possession of an interest by a devisee or legatee is merely postponed for some fixed or definite period. While we have decided that Richard is the only person specifically indicated by the testator in his will as a beneficiary of the maintenance trust, we do not find from the entire context of that instrument, and particularly from the first paragraph thereof, that it was the testator's intention that such maintenance fund should ever become part of Richard's estate, or that he should take a vested interest in such fund, subject to be divested only on the taking place of the before-named contingency.

We have thus covered generally the first five questions submitted to us in the bill of complaint. We answer them now more specifically by holding that the bequest of $25,000 for the maintenance of the homestead farm is not void as violating the rule against perpetuities or for any other cause; that the contingent provisions of the bequest relating to the poor and needy of the town of Portsmouth create a valid charitable trust which takes effect as provided in the will, if and when the farm is conveyed or allowed to pass out of the family name of "Borden" by the trustee or Richard C. Borden; that the complainant as executor should pay the bequest of $25,000 to Alonzo E. Borden as trustee of the maintenance trust established by the first paragraph of the will; and that the second and fifth questions do not require any answer, as they are based on the premise that the maintenance trust is void.

The complainant, as executor of the will, next asks us to whom he shall pay the $50,000 as bequeathed by the seventh paragraph of that instrument. This paragraph is as follows:

"Seventh. I give and bequeath to the Portsmouth Free Public Library Association the sum of fifty thousand ($50,000) Dollars to be held in trust by the Town Council of the Town of Portsmouth and their successors in office; said $50,000 to be deposited as follows: one-half thereof in the Rhode Island Hospital Trust Company of Providence, R. I., the remaining one-half in the Industrial Trust Company, Newport Branch. *Participation* Account. the income to be paid to the Treasurer of said Library Association, by order from the President of said Town Council, and to be used for the Librarian's Salary, for the upkeep of the Library Building and Grounds: If there be any surplus, in any year remaining from *sai* income, such surplus may be used for the purchase and repair of books, under the direction of the Library Trustees and the Library Committee."

The only parties interested in the question raised under this paragraph are the executor, the town of Portsmouth and the Portsmouth Free Public Library Association. The bequest as made clearly constitutes a valid charitable trust. The proper method of carrying it into effect in accordance with the testator's intent is the only issue.

As drawn, the paragraph apparently first provides for an absolute gift of $50,000 to the library association, but then directs that such fund be held in trust by the town council of the town of Portsmouth and their successors. Following this direction, it is then provided where the money thus

given shall be deposited, that the income therefrom shall be paid to the treasurer of the library association, and for what particular purposes that income shall be expended, any discretion as to surplus being given to the library trustees and the library committee. By reason of these specific instructions by the testator, obviously the duties of the trustee of the fund would be practically nominal. Under such a trust the identity of the trustee is not of paramount importance. We do not have the situation where a testator has selected a trustee because of reliance on his personal judgment, discretion and fidelity. A town council, not being a legal entity but a group of individuals, and being subject to frequent change in membership, is not an apt body to act as trustee.

Considering the paragraph as a whole, we are of the opinion that the testator chiefly desired that some check or oversight be imposed on the withdrawal of the income of the fund so that its *corpus* would remain intact. However, it is clear from the definite language used by him that he intended and desired some person or persons other than the library association, the beneficiary of the trust, to hold the fund in question. In our judgment, this expressed intent should not be disregarded. Charitable trusts are favored and are liberally construed so that a testator's clearly intended purpose may be carried into effect. *City of Providence* v. *Payne,* 47 R. I. 444. The town council of Portsmouth is the body which in general administers the affairs of that town, and it may well be that the testator thought, when he bequeathed the sum in question to be held in trust by the town council, that actually he was in effect designating the town itself. We find that the testator's object will best be attained by directing the executor to pay the bequest of $50,000 to the town of Portsmouth, upon receiving a receipt therefor from its duly authorized officer, such fund to be deposited by the town in the places designated by the seventh paragraph of the will, and to be held in trust, the income only to be paid to

the treasurer of the library association upon written order from the president for the time being of the town council of such town.

A construction of the ninth paragraph of the will and of the second codicil is necessary in order to answer the remaining questions asked in the bill of complaint. This paragraph is as follows:

> "ninth: I add to this instrument, a memorandum of household effects and articles of value to be distributed, as directed therein, by my executor hereinafter named; and my will is, that the said memorandum be of the same force and effect as this my last Will; All household furniture and effects not hereinbefore bequeathed either in said Will or said memorandum; shall be a part of my Homestead Farm, including the contents of *of* all buildings, with the livestock and poultry and all articles in any way pertaining thereto. and shall pass in accordance with the First Clause of this Will."

The material portion of the codicil reads:

> "Whereas, in my said Will, I have made mention of a memorandum, distributing my household effect; I have made no such memorandum, and now I am *to* feeble to undertake the task. Now Therefore, I hereby appoint, as Trustees, George F. Bliven, the executor named in my said Will and my friends, George R. Hicks and James F. Sherman, to hold, distribute and dispose of my said household effects of every description, not hereinbefore disposed of in my Will, the contents of the barn, and other buildings on the premises as in their wisdom may seem best."

The residuary legatee made no argument concerning the ownership of the testator's tangible personal property; and did not brief this point. The issues raised under this paragraph and codicil are limited, therefore, to the conflicting rights of the guardian *ad litem* for Richard and of the trustees named in such codicil. No claim is made by the interested parties that there was in existence at the time the will was executed, or thereafter, any memorandum which satisfied legal requirements concerning such a paper so as to give it effect as part of the will. See *Nightingale* v. *Phillips*, 29 R. I. 175. The real question is what tangible personal property passed under the second codicil, and if any so passed, what is the meaning and effect of such codicil.

The general rule is that a will and codicil should be "taken and construed together, in connection with each other as parts of one and the same instrument." *Frelinghuysen* v. *New York Life Ins. & Trust Co.*, 31 R. I. 150, at page 157. It seems reasonably clear from an examination of the ninth paragraph of the will that the testator's first intent was to dispose of certain household effects and articles of value through a memorandum and that the remainder of his tangible personal property was to pass under the latter portion of that paragraph as part of the homestead farm, in accordance with the first clause of the will. Obviously the purpose of the second codicil was that it should take the place of the memorandum mentioned in the ninth paragraph of the will. In the codicil the testator specifically states, as his reason for executing it, that he had made no memorandum, and was then too feeble to do so. It should be noted, moreover, that in this second codicil the following limitation as to articles included appears, viz., "my said household effects of every description, not hereinbefore disposed of in my Will, the contents of the barn, and other buildings on the premises."

In view of the fact that no memorandum had been made, and giving "hereinbefore" the meaning of "heretofore," we are of the opinion, considering the comprehensive

character of the ninth paragraph of the will, that all of the testator's household effects were disposed of by that instrument, and that there were no household effects remaining for the codicil to act upon. Further the codicil being inartistically drawn, it is a question whether the limiting phrase, "not hereinbefore disposed of in my Will," may not have been misplaced and may not have been intended to apply to all the property referred to in such codicil. In any event, having in mind the purpose of the second codicil, we do not find therein any clear intent on the part of the testator to revoke any part of the ninth paragraph of the will, but see an attempt in inapt and uncertain language, to have the codicil do the duty of the unmade memorandum. In our judgment, therefore, all of the testator's tangible personal property passed under the ninth paragraph, none of such property being bequeathed elsewhere in the will, and the second codicil is of no effect because there is no property for it to operate on, and nothing passed under it. This holding makes it unnecessary for us to consider questions raised by the parties as to whether in the second codicil a trust without a *cestui* was set up, whether the testator attempted improperly to delegate testamentary powers, or whether an arbitrary power of disposition was given to the persons named therein.

Our conclusion is, that all of the testator's tangible personal property passed under the ninth paragraph of the will as part of the homestead farm, to Alonzo E. Borden, to be held by him in trust for Richard, under the same trusts as applied to the farm itself and as are set out in the first paragraph of the will; that nothing passed under the second codicil to the three persons appointed as trustees therein; and that none of the tangible personal property becomes part of the testator's residuary estate. These findings answer the questions raised by the ninth paragraph of the will and by the second codicil.

On June 17, 1936, the parties may present to this court for approval a form of decree in accordance with this opinion, to be entered in the superior court.

308

*Ellis L. Yatman, Elmer S. Chace,* of Providence, for complainant.

*Sheffield & Harvey,* of Newport, for Trustee, and William R. Harvey, Guardian *ad litem.*

*Burdick, Corcoran & Peckham, Edward J. Corcoran,* of Newport, for Newport Hospital.

*William MacLeod,* of Newport, for Town Council of Portsmouth and the Portsmouth Free Public Library Assn.

*Charles P. Sisson, Sisson & Fletcher,* of Providence, for respondents George F. Bliven, George R. Hicks, and James F. Sherman.

*John P. Hartigan, Attorney General, John J. Cooney, 2nd Asst. Attorney General,* of Providence, for State.