Carroll,
Dec. 4, 1934.

ELLEN LOUISE WHITE *v.* GEORGE M. WEED, *Trustee, & a.*

*Melvin M. Johnson* (of Massachusetts) and *Warren, Wilson, McLaughlin & Bingham* (*Mr. Johnson* orally), for the plaintiff.

*Wilfred A. Laflamme,* for the heirs of the named remainderman, furnished no brief.

ALLEN, C. J. The exception needs but slight consideration. If it relates to the sufficiency of the evidence of the finding to which it was taken, the evidence is not transferred. If it is directed to the competency of the finding as an aid of construction, it is unnecessary. Only the findings here regarded as competent are given bearing.

Certain aspects of the will were before the court in *Weed* v. *White,* 81 N. H. 197. In the opinion it is said that the remainder could not be distributed while the plaintiff lived. The statement is broader than the needs of the case required. By the will the remainder was to go to any children she might leave and failing them, under certain contingencies to a named person. It was not then found, as it now is, that the plaintiff can leave no children, and the named remainderman was then living. The contingencies were the survivals of the plaintiff by the two life beneficiaries of parts of the trust fund. Although they had died, the court did not decide whether the will expressed the contingencies so as to make its disposal of the remainder dependent upon their fulfillment. While directions for the disposal of the remainder were properly refused, there was no occasion to say that in no event might the trust come to an end during the plaintiff's lifetime. The situation now presented was not before the court and if it had been suggested as a possibility, it would have been a prejudgment to consider it. As matters then stood the trustee had no duties respecting distribution of the fund and hence no right to instructions in regard thereto. There is therefore no prior adjudication to affect the question whether the fund may be distributed under conditions now existing.

The lineal heirs of the named remainderman have no interest in the fund. Since he survived the testator, they may not take under the statute (P. L., c. 297, s. 12). And his interest was not vested, but became lost through the failure of the conditions supporting it. He might take only in the event that the plaintiff, dying childless, was outlived by one or both of the two others sharing in partial measure in the income of the fund while they lived. The plaintiff's survival

of them operated to destroy his interest. It is observed in *Weed* v. *White, supra,* 199: "In the last clause of the portion of the will under consideration the testator apparently had in view only the contingency of the death of the daughter, Susan and Harry or one of them surviving, and only in that event makes provision for the disposition of the corpus of the fund in case the daughter did or did not leave children." This view is adopted. The clause in its entirety is rational and consistent with such effect. It provides for the distribution of the remainder in instalments so that the life interest of any beneficiary might not be impaired. But also by its terms the named remainderman was to take only if the plaintiff died childless and survived by one or both of the two other beneficiaries. Her survival of them nullifying his interest, her impossibility of leaving children completes the chain in establishing an intestacy of the remainder interest. The presumption against intestacy gives way to the failure of the expressed conditions of testacy. As she is the testator's only heir, the interest now belongs to her in legal title.

Upon the inquiry whether her equitable life estate terminated by merger with the remainder interest when that interest unconditionally became hers, the facts appear that the testator disliked her mother, surviving him but now deceased, and wished that she would not acquire any of his property directly or indirectly. These facts are incompetent to aid in showing the meaning of the will. The evidence of the wish is specially incompetent under the parol evidence rule. As a finding it can be only a summary of the testator's statements and declarations of purpose. They are inadmissible on the issue of construction. Hening's Digest, 1631; *Jones* v. *Bennett,* 78 N. H. 224, 233.

The testator's hostility towards the plaintiff's mother does not help to explain the terms of the will. The continuance of the plaintiff's life estate is not made dependent upon the continuance of the mother's life. The will makes no reference to her and wholly disregards her existence. If the hostility helps to explain why he created the life estate, it does not show that he limited it. No purpose to limit for that reason is expressed or disclosed. If a clause that the trust should terminate, subject to the rights of the special beneficiaries upon the mother's death might more effectively accomplish what the testator had in mind, to say that the will contains it would be to hold that he did what he failed to do.

Intentions cannot be made a part of a will unless its language shows them either on its face or in its applications to externals. What

the testator has done, not what he meant but failed to do, is to be given effect. As to all writings, "The intention to be ascertained is that expressed by the parties by the language they used. What did they mean by the words employed? Or, to follow Wigmore's suggestion, what is the 'sense' of the language? ... In the language of Judge *Ladd*, 'the question ... is not what the parties intended to do, but what did they do? What intention did they express ... ?' " *Lancaster &c. Co.* v. *Jones*, 75 N. H. 172, 174. External facts may be received to explain and resolve doubts, but not to create them.

The events resulting in the intestacy of the remainder are alone the determining factors. If the mother were alive, their force would not be lessened. The plaintiff, having an unrestricted life estate in equity, might do with it as she pleased. When the remainder became hers, her right to dispose of it was absolute. While her mother lived, the plaintiff might invest her mother with all that the testator left her. Since the testator intended that his property should go as his will provided, he necessarily intended by it that what he gave his daughter might be given by her to her mother. The will not being doubtful in regard thereto, extraneous evidence concerning the mother is wholly irrelevant. If there was in fact some oversight on his part, the will in its terms does not show it, and the application of the terms produces no doubts of their effect. The reason for terms when their meaning and effect is clear is not a matter of consideration. Actual purpose may not take the place of purpose disclosed by the will. As is often said, authority to construe includes no power to reform.

In some jurisdictions courts of equity have exercised a discretion by which an equitable life estate the beneficiary of which owns the remainder interest in legal title is held to be merged into the remainder, with a resulting termination of the trust. The view is taken that the terms of the instrument of trust may not be disregarded, but so far as intent goes, it may be shown by reasonableness and justice. Intent that there be a merger is assumed if a contrary intent does not appear. The doctrine has been stated in this manner: "There is no doubt of the power and duty of the court to decree the termination of a trust, where all its objects and purposes have been accomplished, where the interests under it have all vested, and where all parties beneficially interested desire its termination. Where property is given to certain persons for their benefit, and in such a . manner that no other person has or can have any interest in it, they are in effect the absolute owners of it, and it is reasonable and just

that they should have the control and disposal of it unless some good cause appears to the contrary." *Sears* v. *Choate,* 146 Mass. 395, 398.

Under the rule which has here been invariably followed that a will does only what is shown it intends to do, it is questionable if this doctrine of equitable discretion should be held to be in force. "The intention of the testator is the sovereign guide in the interpretation of a will. That being ascertained, the court must enforce it, and has no discretion in the matter." *Peaslee* v. *Rounds,* 77 N. H. 544, 545. If intention is not ascertainable, the failure to express it would seem to render void the attempt.

The distinction between construction and discretion, so far as discretion has been exercised, may be a narrow one. But the implications and logic of the principle of discretion present doubts of its merit. The policy for exceptions to the rule that the testator's intent is to be found and control in all cases is not readily perceived.

No need for decision upon the doctrine of discretion now arises, however. The will provides for a merger under the existing conditions.

The testator created certain estates. The plaintiff's life interest was unrestricted. It was assignable as completely as though it was legal instead of equitable in character. She was unrestrained in its enjoyment. The conditional intestacy of the remainder was intentional. The will made all the testamentary disposal of his property the testator saw fit to make. He is to be found to have known that the plaintiff would acquire it if the conditions for its establishment were fulfilled. Giving her two interests in the fund, he intended that the legal incidents of relationship between them should attach. Whether or not he was familiar with the rule of merger when both the life and remainder interests are of legal nature, he intended no exception from the rule because the life estate was equitable in character. He naturally thought that if the plaintiff acquired the general ownership of both interests in enjoyment, she became the owner of all there was to be owned and entitled to treat the property as its full and sole owner. The thought is implied in the will.

The plaintiff was at liberty, upon the vesting of the remainder interest in her, to transfer to the trustee both her equitable life estate and the remainder interest. The trustee would then have the full legal title to the fund. The trusteeship would terminate, since one may not be under obligation to himself. There would be no limitations and no interest of others. The trustee, thus having the full legal title discharged from the trust, might transfer it to the plaintiff. The will, permitting such a transaction, contemplated it and its out-

come, and it is not required that the outcome should be reached by such a roundabout procedure. A valid result should not require indirect methods to accomplish it.

The remainder interest was to become the plaintiff's, not in any, but only in certain, events, and until they transpired, the trust was interposed as a suspension. It was created to provide for any children the plaintiff might leave and alternatively under stated contingencies for the named remainderman. Children failing and the contingencies not being met as to him, it had served its mission. The will shows no thought of advantage to the plaintiff from the trust if she became the owner of the remainder interest. It made her the outright owner of the testator's homestead and his intentional intestacy under prescribed conditions eventuating made her the outright owner of the remainder interest. Thereby he considered that she might safely in her interest and welfare be uncontrolled in respect thereto. It follows that the trust was limited in duration to the continuance of the possibilities that the remainder would vest in others.

When property is substantially and for all practical purposes fully given, an intent that the donee shall fully have it is manifest in the absence of proof that unsubstantial and impractical restrictions were intended to be imposed. A construction avoiding the result of deferring some of the benefits of ownership until the owner's death is fairly to be adopted. The rule preferring reasonable to unreasonable implications and effects (*Kendall* v. *Green*, 67 N. H. 557, 563) is only employed.

The result reached may be distinguished from that in *Herrick* v. *Slocombe*, 84 N. H. 413. Therein, of two trust funds, one was held to provide for two successive life estates and then to go to others than the life beneficiaries. The trust of the other created a life estate the beneficiary of which, as one of two residuary legatees, owned half the remainder interest, and later, as heir of the other residuary legatee, became the owner of the other half subject to any claims of the latter's estate in respect to it. As to half the fund the testator undoubtedly intended the separation of the life interest and the remainder to be maintained during the life. As no provision was made for different treatment of the other half, the intent to have the entire fund continue undivided during the life was found. Each case stands on its own facts of footing.

*Case discharged.*

PAGE, J., did not sit: the others concurred.