INDUSTRIAL TRUST COMPANY, *Trustee, vs.*
ELIZABETH WILSON *et al.*

JUNE 30, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

170

CONDON, J.   This bill in equity for instructions, relating to the construction of the twenty-eighth clause of the will of Samuel Pomeroy Colt, was originally before this court and duly heard on April 24, 1936.   After hearing, this court rendered an opinion deciding one of the four questions certified to us by the superior court and remanding the cause to that court for further proceedings for the purpose of adding parties in interest before deciding the remaining three questions.   See *Industrial Trust Co.* v. *Wilson,* 58 R. I, 378, 192 A. 821.   This having been done, the cause was again certified to this court and these additional parties were given an opportunity to be heard on those questions. Some of them, by counsel or by their guardians *ad litem,* were heard, and the original parties were also given an opportunity to be heard a second time.   There was thus a thorough hearing of all points of view after full and able arguments.

The three questions remaining to be answered are in the same form as they were when they were originally certified. For convenience, we shall restate them here.   "(1) Whether the defendants, Caldwell Colt and Byron Colt, are members of the class of the surviving child or children of said Roswell C. Colt entitled under the Twenty-Eighth Clause of the will

of said Samuel P. Colt after the decease of said Roswell C. Colt to the share of the net income to which he would be entitled if living; (2) If the preceding question is answered in the affirmative, whether defendant Melba Colt is a member of said class; (3) If the two preceding questions are answered in the affirmative, whether the defendant Melba Colt's right to participate in such share of income commenced at the date of the decease of said Roswell C. Colt or at the date of her birth?"

Roswell C. Colt survived his father, Samuel Pomeroy Colt, who died August 13, 1921, at which time Roswell had one child, Elizabeth Colt now Elizabeth Colt Wilson. Later, in 1927, after the death of his first wife, Roswell married Melba C. Colt and, by her, he had three children, Byron Colt, Caldwell Colt, and Melba Colt, who was born on November 17, 1935, after the death of her father, which occurred on May 1, 1935.

The death of Roswell and the posthumous birth of Melba necessitated the filing of this bill by the trustee for instructions as to its duty in paying the income of the trust estate set up under the twenty-eighth clause of the will. This clause in full reads as follows:

"All the rest, residue and remainder of my estate, real and personal, (meaning and intending thereby the one half of my residuary estate not set apart as provided in the preceding Twenty-seventh section of this Will), of which I shall die seized and possessed, or to which I shall be in any manner entitled, including any estate of which I shall have the power of appointment by will I give, devise and bequeath to said Industrial Trust Company and its successors in trust for the uses and purposes hereinafter expressed and declared of and concerning the same. That is to say: my Trustee shall make an inventory of all said rest, residue and remainder real and personal estate, and shall place values on the same and the respective parts thereof to the best of its skill and understanding; and my Trustee shall then divide said residuary estate into six equal parts or shares, each of which shall contain an equal proportion

as near as may be of all bonds, shares of capital stock in corporations and other securities included in said residuary estate. One of said six parts or shares of said residuary estate shall be conveyed, transferred and made over, discharged of all trust, to my son Russell Griswold Colt, and one of said parts or shares shall be conveyed, transferred and made over, discharged of all trust, to my son Roswell Christopher Colt. One of said six parts or shares shall be conveyed, transferred and made over, discharged of all trust, to my brother, Le-Baron Bradford Colt. The remaining three parts or shares of said residuary estate shall be held by my Trustee upon the trusts hereinafter expressed. My Trustee shall pay over semi-annually or oftener in its discretion the net income arising therefrom in equal shares to my two sons, Russell Griswold Colt and Roswell Christopher Colt and my brother LeBaron Bradford Colt, for and during the terms of their natural lives; *and upon the decease of any of them should such deceased son or brother survive me, otherwise from and after my decease, my Trustee shall pay to the surviving child or children of such deceased son or brother for and during the term of his, her or their natural life or lives the share of said net income to which such deceased son or brother would be entitled if living.* And upon the decease of such child or children of my said sons and my said brother, as the same shall respectively happen, my Trustee shall convey, transfer and set over to the child or children of such deceased child or children, *per stirpes* and not per capita, his, her or their proportionate share of this trust estate, as an estate vested in fee simple, discharged of all trust. And in case of failure of the limitations and objects of the preceding trust, that is to say, if either or both of my said sons or my said brother shall die leaving no child surviving, or if leaving child or children surviving, such last named child or children shall die leaving no child or children surviving him, her or them, as the case may be, then my Trustee shall convey, transfer and set over, discharged of all trust, the share or shares of said trust estate to which any such grandchild or grandchildren would have been entitled if living, to the person or

persons who at the time of ascertaining such failure of the aforesaid objects of said trusts would have been my heir or heirs-at-law according to the statutes of descent of real estate then in force in the State of Rhode Island, if I had at that time died intestate, seized and possessed of said share or shares." (italics ours)

The portion of the clause which we have italicized is the part concerning which a question has arisen requiring a construction by this court.

The respondent Wilson contends that the words *"shall pay to the surviving child or children of such deceased son or brother"* means child or children surviving the testator. The respondents Melba P. Colt and the respective guardians *ad litem* of Caldwell, Byron and Melba Colt, urge on the contrary that these words clearly mean the child or children surviving such deceased son or brother, that is, such child or children living at the decease of its father. The other respondents, according to their interests, range themselves on one side or the other of these two constructions. The complainant takes no position, since it is here asking for instructions as to whom it shall pay the deceased Roswell C. Colt's share of said trust income.

The respondent Wilson, in support of her contention, urges that a consideration of the testator's whole will discloses a general scheme of distribution of his estate which requires a construction of the clause under consideration as contended for by her. She points out that a construction such as contended for by the other respondents, Caldwell, Byron and Melba Colt, will be contrary to the intention of the testator as indicated or implied by such scheme and also will result in the ultimate gifts of principal in the twenty-eighth clause being declared void on the ground of remoteness.

With reference to this latter argument, we may say at the outset that we are concerned here only with the question as to whom the income is payable under the twenty-eighth clause. Neither the bill nor any of the answers filed

by respondents in the superior court raises the question of, or specifically seeks any determination as to, the remoteness of any ultimate gift of the principal under said clause. We think it will be time enough for that question to be considered when it arises directly upon the death of a child of a deceased son or the death of a child of the deceased brother of the testator. This is especially so since we are of the opinion that the particular language as to the distribution of income, presently under consideration, may be construed without necessary recourse for aid to other parts of the clause. Such language appears to us to be neither inconsistent with nor contradictory to other parts of the clause, nor is it of itself ambiguous or susceptible to different meanings.

Only because it appeared to us that our construction of this language with reference to income might *possibly* affect at some later time those interested in the principal did we order that all persons in interest in such principal be made parties to this proceeding. We did this out of caution, and in order to give such parties an opportunity to present their views as to the proper construction of that particular language with reference to income, and not because we felt it incumbent upon us at this time to construe the remainder of the clause relating to the ultimate disposition of the principal of the trust estate.

In our earlier opinion—*Industrial Trust Co.* v. *Wilson,* 58 R. I. 378, 192 A. 821 at 824—we gave the following reason for requiring that all other persons in interest, and those possibly in interest, be made parties: "We deem this necessary to be done by the executor and trustee and by the superior court before answering questions 1, 2 and 3 in the instant case, so that all such persons and interests may be bound by our construction of the quoted language of clause 28 and not be left free to contend in the future for a different construction of that language." The language thus referred to as "the quoted language of clause 28" appears on page 822

of that opinion and relates only to the income. However, that language caused the parties at that hearing to raise the question of whether the time of survivorship referred to meant only the death of the testator. The determination of this question conceivably might be of decisive importance to the persons and interests that we felt ought to be represented. But there was then no intention on our part to go beyond a construction of the clause sufficient to determine who were entitled to the income. No argument was advanced at the second hearing which would lead us to alter the view expressed in the above quotation from our former opinion.

The respondent Wilson claims that the general scheme of the testator's will shows that he intended his estate to go primarily to those persons whom he knew in his lifetime and toward whom he manifested great love and affection. She relies very strongly on this view in support of her contention in the instant case, and she argues that such was the view of this court some years ago when it was called upon to construe the twenty-seventh clause of this very will. *Colt* v. *Industrial Trust Co.*, 50 R. I. 242. It is true that the court in that case, in seeking for the testator's meaning in the use of the word "grandchildren" in the twenty-seventh clause, which term as there used the court considered ambiguous, did make a survey of the entire instrument and concluded that the testator, in speaking of *his grandchildren,* intended only his grandchildren living at his death. But this rule of construction was adopted by the court only as an aid to the construction of the ambiguously used word in the clause before it. Unless the language of clause twenty-eight which we are now considering is likewise ambiguous, we need not resort to other parts of the will to determine the intention of the testator in using that language.

We are of the opinion that this particular language of the twenty-eighth clause now before us is not ambiguous. Therefore aid in its proper construction is not necessary. Because the court, in construing an ambiguous term of the

twenty-seventh clause found a certain intent of the testator, it does not follow that the same intent must necessarily be implied in construing the markedly different language of the twenty-eighth clause, which language, in our opinion, clearly expresses the intention of the testator.

The respondent Wilson argues further, however, that consideration of certain language used by this court in *Industrial Trust Co.* v. *Colt,* 136 A. 771, taken in connection with the decision of the court in *Colt* v. *Industrial Trust Co.,* 50 R. I. 242, construing clause twenty-seven of this will, which followed the first cited case, leads to the conclusion that the law applicable to this will in its entirety was definitely determined by the latter case. And from this she argues that the matter now before us is, by virtue of the decision in that case, *res adjudicata* and *stare decisis.*

The language in the case in 136 A. 771, at page 772, relied upon to support this argument is "consideration of clause 27 almost necessarily involves a consideration of clause 28." We do not interpret this statement to carry the important meaning attributed to it by the respondent Wilson. When examined in connection with its context in that opinion, which incidentally did not construe either clause twenty-seven or twenty-eight, it is of slight, if any, importance. It is significant in the light of that statement that, when the court was called upon later to construe clause twenty-seven, it did not consider clause twenty-eight, in reaching its decision as to what was meant by the word "grandchildren," although it considered clause twenty. This was quite in keeping with the problem before it, as clause twenty was cognate to clause twenty-seven, in that in both clauses the testator used the term "grandchildren." There is no reference by him to his "grandchildren" in clause twenty-eight. Where in the last portion of that clause the word "grandchildren" is used, it clearly refers not to his grandchildren but to the grandchildren of his sons and brother. Apparently the court felt that there was nothing to be gained by con-

sidering clause twenty-eight in construing clause twenty-seven.

It is also noteworthy that the court took occasion in two instances in 50 R. I. 242 to refer to clause twenty-eight, at pages 249 and 251, respectively, in the following manner: "Under the 28th clause the net income from the residuary estate was to be paid in equal shares to the testator's two sons and his brother or their surviving children."

The testator's brother LeBaron Bradford Colt died after the testator, leaving three daughters surviving. LeBaron C. Colt, son of LeBaron Bradford Colt, died before the testator executed his will. The children of LeBaron C. Colt claimed the right to share with their aunts, the three daughters surviving, in the net income which LeBaron Bradford Colt would have received had he lived, but the court answered that this claim could not be allowed "as the 28th clause clearly states that the share of the net income is to be paid to the surviving children of the testator's brother, and the trustee is so advised."

While these statements of the court do not demonstrate a determinative construction of the language of clause twenty-eight as we have construed it here, they certainly point in that direction; or at least they are of sufficient uncertainty to make it impossible to say that, in performing the specific duty before it in 50 R. I. 242, the court undertook, in passing on the claim of the children of LeBaron C. Colt, to establish the law of this will, as to clause twenty-eight in its entirety as well as to clause twenty-seven.

Another observation may be made here, and it is this: In considering clause twenty-seven, the court, in that case, had before it a single term to construe, namely, "grand-children", unaccompanied by the word "surviving", which is so important in clause twenty-eight. The court did not have occasion to fully consider that word in clause twenty-eight but if it did consider it in the language which we quoted above from its opinion in 50 R. I. 242, then it is as

reasonable to infer from that language that the court understood it to mean the children of the deceased brother, LeBaron Bradford Colt, who survived him, as to infer that they meant those who survived the testator.

For the reasons above given, we are of the opinion that the doctrine of *stare decisis* does not apply in the matter now before us. And, of course, the doctrine of *res adjudicata* is likewise inapplicable.

We have above several times referred to the language now before us for construction as clear. The specific clause to be construed is ". . . my Trustee shall pay to the surviving child or children of such deceased son or brother . . .." The grammatical construction of the word "surviving" as it is used in this clause unquestionably relates to the child or children living at the time of the decease of such son or brother, and we think this is the natural construction of the words. It would be a strained construction to relate the word to the child or children of such son or brother living at the testator's decease. The natural way and the simplest way for the testator to have expressed such an intention would have been to say: "to the child or children of such son or brother, living at my decease."

Unless a contrary intention clearly appears in the will, the language used by the testator must be given its ordinary and natural construction. *Rhode Island Hospital Trust Co.* v. *Davis*, 41 R. I. 386. Only if there is something apparent in the context of the will or the attendant circumstances which shows that the words are used in a different sense, are they to be taken out of their literal and ordinary import. *Bailey* v. *Brown*, 19 R. I. 669, 36 A. 581. See also *Perry* v. *Thomas*, 38 R. I. 328, 330.

When the language of the testator is clear and explicit, it must prevail, notwithstanding another rule of construction which provides that the court shall put itself in the situation of the testator with reference to the property and relative claims of the testator's family, his relations with them and

the circumstances surrounding him when he drew his will, as this latter rule is intended for use merely as an aid to construction, or only when the provisions of the will are doubtful or admit of more than one interpretation. *Perry, Admr.* v. *Hunter,* 2 R. I. 80.

As said by *Ames, C. J.,* in *Derby* v. *Derby,* 4 R. I. 414, 424: "We are obliged to·construe the *language* of the will, and thence to gather the intent of the testator." The legal effect of the provision of a will, plainly expressed, must prevail over an implied intention of the testator. *Barker* v. *Ashley,* 58 R. I. 243, 192 A. 304.

It was stated in *Sheldrake's Estate,* 308 Pa. 542, 162 A. 823, 824, that: "Testator's intention must be gathered from the words he uses in the disposition clause. . . . While it is true that the entire instrument should be considered, it is on the other hand clear that this rule is only available when there may be doubt as to a particular disposition of a part of the estate. Where a testator uses language that is plain and certain, which does not conflict with any other part of the will, there is no necessity to consider the entire instrument . . . ."

In *White* v. *Weed,* 87 N. H. 153, 175 A. 814, 816, the court says: "What the testator has done, not what he meant but failed to do, is to be given effect. As to all writings, 'the intention to be ascertained is that expressed by the parties by the language they used. What did they mean by the words employed?' "

And in *Matteson* v. *Brown,* 33 R. I. 339, this court said: "In seeking the intention of the testator the court must consider what he has written in his will; and nothing is to be inferred save what is a necessary implication." Recently we said that the testator's intent is to be gathered only from what is actually expressed by the language employed in the will and from such implications necessarily flowing therefrom. *Bliven* v. *Borden,* 56 R. I. 283, 185 A. 239. And we have also said that it is the duty of the court in constru-

ing wills to determine and, if possible, to give effect to the testator's intention as expressed in his will. *Gould v. Rhode Island Hospital Trust Co., 53 R. I. 422, 425; Rhode Island Hospital Trust Co. v. Tucker, 51 R. I. 507, 510.* In other words, this court has consistently ruled that it is *"the written expression* of the testator, taken in its natural sense and use, and applied to existing facts" that must control. *Ogden, Petitioner, 25 R. I. 373, 374.*

Speaking of the meaning of words of survivorship in a will this court said in *Bailey v. Brown, supra,* at page 681: "There has been much discussion in the books as to the proper construction of the words 'survive' and 'survivors' when used in wills, but it is now settled by numerous decisions that the same rule of construction will be applied to these words as to any others, viz. that they will be taken in their literal and ordinary import *unless there is something in the context or attending circumstances which shows that they were used in a different sense."*

The court thereupon refused to give the word "survive" its primary meaning, because to do so, it said "would unquestionably defeat the scheme of the will and codicil, by nullifying every provision thereof with reference to the remainders over for the children" of testatrix's surviving sons and daughters "as there were no such children living at any time during her life." And there were other equally cogent reasons given by the court for not adopting the primary meaning of the word "survive" and the one ordinarily accepted.

Of course if it is clear that the testator is using language in a special sense, it will be interpreted in that sense since the test is what his words meant to him and what thought he intended to convey by his use of them. But he is presumed, in the absence of such clear indication, to have used the particular words to convey their usual and ordinary meaning. The fact that the testator in the instant case knew only his nieces and grandchildren, who were living at

his death and had great affection for them, does not show that he intended that any children of his sons born after his death should have no share in his bounty. Certainly such a reason would be weak indeed for overthrowing the plain meaning of the language used by the testator, and substituting for it a meaning which we find only implied, or to be inferred from other dispositions in the will. Such a construction cannot, consistently with the well-established rules of construction adverted to above, be adopted.

One rule of construction of wills above all others is that no attempt should be made to construe that which needs no construction. Where the language of the will is plain, the will interprets itself. And so we get back to the real question: What did the testator say, and what did he mean by what he did say?

Reading the will before us as a whole, we find no general intent of the testator underlying and running through the will which confines the objects of his bounty to those whom he knew in life and manifested an affection for, to the utter exclusion of all others who might be born after his death and be as near to him in blood as the living grandchildren and nieces whom he knew. On the contrary, we find running through this will an intense desire on the part of the testator not only to bestow generous portions of his estate upon his close kin whom he knew in life but also to make his bounty reach into the distant future for the benefit of remote descendants. To accomplish that latter purpose his will indeed discloses a carefully planned scheme. This is especially evident in the twenty-eighth clause, which is now under consideration.

By that clause he provides that one half of his residuary estate is to be given in trust, and by his trustee then to be divided into six equal parts or shares as near as may be. Three of these parts are then to be transferred, discharged of said trust, to each of his sons, Russell G. Colt and Roswell C. Colt and to his brother LeBaron B. Colt. The remaining

three parts are to be held in trust and the trustee is to pay over the net income thereof to each of the above, Russell, Roswell and LeBaron, during their lives and, after their respective deaths, to their children for their lives and then the principal is to be paid over to the child or children of such children *per stirpes* as an estate in fee simple. In other words, the testator, in this clause, prospectively disposes of a large portion of his estate in fee not to *his own* grandchildren as he did in the twenty-seventh clause, but to the grandchildren *of his sons and brother.* It is quite clear from this disposition that the testator, in laying out the general scheme of his will, did not in clause twenty-eight confine himself to benefiting only those whom he knew in this life and for whom, it was plain, that he manifested a profound affection.

But the respondent Wilson and the other respondents, who join with her, argue that the testator nevertheless intended that, while ultimately persons never known to him would, under this clause, share in his bounty, they would be confined to those who were descended from such of the children of the testator's sons and brother as might be living at the testator's death. We cannot accept this construction. It is forced and unnatural and does violence to the language which the testator has himself used throughout the twenty-eighth clause.

The construction which we have put upon these words is consistent with the well-established rule that, where a gift is made to a class following an intervening life estate to a third person, membership in the class is determined at the period of distribution which in such a case is the expiration of the preceding life estate. *Hazard* v. *Stevens,* 36 R. I. 90, 88 A. 980; *Perry* v. *Brown,* 34 R. I. 203, 226, 227; *Greene* v. *Rathbun,* 32 R. I. 145, 156; *Rozell* v. *Rozell,* 217 Mich. 324, 186 N. W. 489; *Webber* v. *Jones,* 94 Me. 429, 47 A. 903; 2 Jarman on Wills, (6th ed.) 168. The only qualification to

this rule is that there must not appear in the will a manifestly clear intention of the testator to the contrary.

The established rule is that the use in a will of the word "surviving", or of an expression akin to it to describe a class who are to take after an intervening life estate, refers to the termination of such life estate and not to the death of the testator. The employment of such a word or words under such circumstances shows clearly that the testator intended to postpone the vesting of the gift over to the time when the life estate would end. Since the case of *Cripps* v. *Wolcott,* 4 Madd. 11, 56 Eng. Rep. 613, decided in England in 1819, the above rule has become thoroughly established in this country and is supported by the great weight of authority. 2 Jarman on Wills, (6th ed.) 675. *Jessup* v. *Nixon,* 193 N. C. 640, 137 S. E. 810; *Hawke* v. *Lodge,* 9 Del. Ch. 146, 77 A. 1090; *Ridgely* v. *Ridgely,* 147 Md. 419, 128 A. 131; *Brown* v. *Potter,* 114 Conn. 441, 159 A. 275. In Massachusetts also the rule seems to prevail, but there it appears that the court resolves the question as to what period the survivorship is related rather to "the apparent intention of the testator, in each case, than upon any rigid rule." *Denny* v. *Kettell,* 135 Mass. 138, 139.

In all or practically all of the cases cited and many others which we have examined, the word "surviving" or "survivor" has been used by the testator rather generally as connected with himself, for example, "my surviving nephews or nieces", "my surviving children", whereas the expression used in the case now before us is definitely and specifically connected to third persons, that is, "to the surviving child or children of such deceased son or brother." There is, therefore, no difficulty in relating the survivorship to the decease of such son or brother, as the ordinary grammatical construction of this language clearly makes such a construction necessary, unless we are to seek for a meaning that the words themselves as written by the testator do not convey.

It is not our purpose to discuss every point raised by the briefs, but before concluding our consideration of the question to which we have been attending, we should say that, inasmuch as we view the language of the testator as not ambiguous or reasonably susceptible of two constructions, one of which would sustain the clause and the other invalidate it in part, we need not discuss at this time the many authorities cited in support of the contention that the rule against perpetuities applies here and should be used as a rule of construction. In accordance with well-settled law, we have construed the language of the testator as if the rule did not exist. *Rhode Island Hospital Trust Co.* v. *Peck,* 40 R. I. 519; Gray on the Rule against Perpetuities, (3rd ed.) §629. Having found no ambiguity in the testator's language but rather a clear grammatical expression of his intention not manifestly contrary to any other part of the clause or the will as a whole, there is no room for the employment of the rule as an aid to construction. Gray, *supra,* §633. And in this connection it may be observed that our construction does not result in any remoteness as far as the gift of income is concerned.

For the reasons above mentioned, the children of Roswell C. Colt, born after the death of the testator, Samuel Pomeroy Colt, are entitled to share with his other child, Elizabeth Colt Wilson, in the trust income which their father, if still living, would be receiving under the twenty-eighth clause of the will.

The only question remaining to be answered is whether or not Roswell's posthumous child, Melba, is to be considered a surviving child and therefore entitled to share equally with her brothers and sister in said income from the date of the death of Roswell. We know of no good reason in law why she should not. The law appears to be well settled that, if it is for its benefit, a child begotten but not actually born is treated as in being. *Doe* v. *Clarke,* 2 H. Bl. 399; *Hall* v.

*Hancock,* 15 Pick. 255; *McLain* v. *Howald,* 120 Mich. 274, 79 N. W. 182. 2 Simes, Law of Future Interests, §388.

There is, however, a question as to whether such a child comes into the legal enjoyment of such benefit from the death of its father or at the time of its birth. In England it has been held that it is at the latter date. *Rawlins* v. *Rawlins,* 2 Cox Ch. 425, 30 Eng. Rep. 196. But the court, in an exceedingly brief opinion, gives no reason for such a holding and cites no prior authority to support it. We are disinclined to follow that case under such circumstances, and especially since, in the instant case, there appears to be no sound reason for treating Melba differently in this matter from her brothers, Caldwell and Byron, and her sister, Elizabeth Colt Wilson.

The trustee is, accordingly, instructed that each child of Roswell C. Colt is entitled to receive an equal share of that part of the net income which their father would be entitled to receive if living.

On July 11, 1938, the parties may present a form of decree, in accordance with this opinion, to be entered in the superior court.

*Eliot G. Parkhurst, Edwards & Angell,* of Providence, for complainant.

*Chauncey E. Wheeler,* representative of contingent interests, *Hinckley, Allen, Tillinghast & Wheeler, Mason B. Merchant, Isadore Paisner,* all of Providence, of counsel.

*Greenough, Lyman & Cross, William B. Greenough,* of Providence, for respondent Mary L. Gross.

*Walter V. Moriarty,* of Providence, guardian *ad litem* for Samuel Colt Wilson.

*Charles R. Haslam,* of Providence, guardian *ad litem* for Caldwell Colt and Byron Colt. *Harry A. Tuell,* of Providence, *John N. Regan,* of counsel.

*Edward W. Day,* of Providence, guardian *ad litem* for Melba Colt.

*Edward M. Brennan,* of Providence, solicitor for S. Reed Anthony, and guardian *ad litem* for LeBaron Colt Anthony.

*George Hurley, John W. Moakler, Jr.,* of Providence for Theodora C. Barrows and Elizabeth L. Anthony, and for Theodora Ledyard Barrows as Administratrix d.b.n.c.t.a. of estate of LeBaron B. Colt.

*Robert P. Beagan,* of Providence, for Edwin A. Barrows, Jr.

*Tillinghast, Collins & Tanner, Colin MacR. Makepeace, Robert W. Hankins,* of Providence, for Barbara DeWolf Nightingale.

*Westcote H. Chesebrough,* of Providence, guardian *ad litem* for Barbara Nightingale.

*Stockwell, Chace & Yatman, Edward A. Stockwell* of Providence for J. Edith C. Colt and George A. C. Colt.

*Clifford A. Kingsley,* of Providence, guardian *ad litem* for Patricia C., Joy B., and Blair A. Barrows, and Theodora De Wolfe Flynn.