FLEET NATIONAL BANK, as Trustee
Under the Will of Samuel
Pomeroy Colt

v.

Samuel P. COLT et al.

No. 86–89–Appeal.

Supreme Court of Rhode Island.

July 14, 1987.

---

Noel Field, Providence, for Melba C. Delmouzos.

Steven Rosenbaum, Providence, for Marika Delmouzos.

OPINION

SHEA, Justice.

This case is before the court following a Superior Court granting of a joint motion for certification filed by the complainant and the respondents pursuant to Rule 72(a) of the Superior Court Rules of Civil Procedure. The question involves the application of the rule against perpetuities to the testamentary disposition of a portion of the estate of Samuel P. Colt. We are asked to decide whether the children of a second life tenant, which children were not lives in being at the death of either their great grandfather Samuel P. Colt (the testator) or their first life tenant grandparent,[1] are entitled to receive their second life tenant parent's share of Colt's estate. We answer the question in the affirmative but, for reasons set forth later in this opinion, we limit our holding to those children who are in a position to inherit immediately.

The petitioner in this case is the executor of and trustee under the will of Samuel P. Colt. Those parties respondent who filed briefs with this court include the administrator c.t.a. of the estates of Russell G. Colt, son of the testator, and executor of the estate of Russell's wife Gwendolyn M. Colt; the executor of the estate of Caldwell C. Colt, son of Roswell C. Colt and grandson of the testator; Samuel Peshmalyn Colt and Julia Wedgewood Colt, the children of Caldwell; and Merika I. Delmouzos, daughter of Caldwell's sister Melba C. Delmouzos. An appointed guardian ad litem representing the position of the contingent interests of persons not in being or ascertainable whose interests may be affected by this cause also filed a brief. Certain other parties respondent were defaulted for failure to answer the complaint pursuant to Rule 55(a) of the Superior Court Rules of Civil Procedure.

It is possible that this opinion could be the last of a succession of legal actions that began in 1921 when the testator died. The

William P. Robinson, Edwards & Angell, Judith Savage, Edwards & Angell, Providence, for plaintiff.

A. David Tammelleo, Providence, for Theodora Flynn Bergey.

Richard Zacks, Providence, for Samuel P. Colt et al.

---

1. The terms "first" and "second" life tenant will be explained later in this opinion.

recitation of facts giving rise to this action is lengthy but necessary to an understanding of the issue. The question before the court involves trusts created in clauses twenty-seven and twenty-eight of the Last Will and Testament of Samuel Pomeroy Colt (the Will).

In the twenty-seventh clause the testator created a trust consisting of certain real estate in the town of Bristol, Rhode Island, to be held for his children and grandchildren, a portion of which was to be made available for their use and enjoyment during their natural lives (the 27th Clause Trust). According to the Will the trustee was to convey the real estate, discharged of all trust, to the survivor of said children and grandchildren. The trustee of the 27th Clause Trust was also charged with holding and managing all of the testator's other real estate located in Bristol "and from the net income, rents and profits derived from said other real estate, to apply so much thereof as may be necessary for the expenses attending the care * * *" of certain real estate held in trust. In addition, the executor was instructed to "set apart one-half of [the] residuary Estate to be held * * * in special trust to apply the net income thereof or so much as may be necessary toward the expenses" of certain trust real estate. The testator provided that any surplus of such income was to be applied "as provided in the Twenty-eighth clause of this Will with reference to the income of the residuary Estate to be held by my Trustee. And upon the termination of the trust hereinbefore expressed concerning my real estate in said Town of Bristol, said one-half of my residuary estate shall fall in and become a part of the other half of my residuary estate to be divided and distributed or held as provided in clause Twenty-eighth of this Will."

The twenty-eighth clause provides for the distribution of the testator's residuary estate which was also placed in trust (the 28th Clause Trust). The trustee was instructed to divide the residuary estate into six equal shares, three of which were to be conveyed outright to the testator's two sons Russell G. Colt and Roswell C. Colt, and to his brother LeBaron B. Colt, respectively, free of all trust. The net income from the three shares remaining in trust was to be paid, in equal shares, to Russell, Roswell, and LeBaron for life. Upon their deaths, their surviving children were to receive their respective parent's share for life. The clause further provides that "upon the decease of such child or children of my said sons and my said brother, as the same shall respectively happen, my Trustee shall convey, transfer and set over to the child or children of such deceased child or children, per stirpes, and not per capita, his, her or their proportionate share of this trust estate, as an estate vested in fee simple, discharged of all trust."

The testator died survived by his two sons, Russell and Roswell, and by his brother LeBaron.[2] These three individuals were the first life tenants under the twenty-eighth clause. Also living at the time of the testator's death were four of his grandchildren; three the children of Russell, and one child of Roswell. In addition, LeBaron had three children, nieces of the testator, all of whom were alive at the death of their uncle. After the testator died, Roswell had three more children who, along with the testator's four grandchildren and three nieces alive at his death, constitute the second life tenants under the twenty-eighth clause.

The issue now before the court arises because of the death of Caldwell C. Colt, one of the three children of Roswell born after the death of his grandfather the testator. According to the agreed statement of facts filed in the Superior Court, Caldwell was receiving the net income from his respective share of principal under the 28th Clause Trust and a certain share of surplus income under the 27th Clause Trust at the time of his death.[3] Likewise, all of the

---

2. A chart outlining the relevant branches of the Colt family tree is attached to this opinion for the convenience of the reader.

3. The composition of Caldwell's share in both trusts is explained later in this opinion.

second life tenants still living are receiving, and those second life tenants who have died were receiving at the times of their deaths, shares of principal and surplus income under both trusts.

Prior judicial interpretation of the Will has dictated the distribution of the respective shares of 27th Clause Trust surplus income and 28th Clause Trust principal held by those previously deceased second life tenants. Caldwell's death, however, presents this court with a question not addressed in its previous decisions. Caldwell leaves two children, Samuel Peshmalyn Colt and Julia Wedgewood Colt, great-grandchildren of the testator. Neither of Caldwell's two children were lives in being at the death of the testator or at the death of their first life tenant grandparent Roswell. Hence, we must decide whether Caldwell's children may inherit their father's share of the testator's estate. Before reaching this question, however, further background must be presented to outline prior decisions of this court regarding dispositions of respective shares of the trusts at the deaths of other second life tenants, and to explain their impact on both this decision and the present composition of Caldwell's estate.

This court has had the opportunity to interpret the Will on a number of occasions. The first opportunity to interpret the twenty-seventh or twenty-eighth clause arose in 1929 in *Colt v. Industrial Trust Co.*, 50 R.I. 242, 146 A. 628 (1929).[4] The *Colt* court addressed the intent of the testator in creating the 27th Clause Trust consisting of his Bristol real estate, certain portions of which were to be held for the benefit of his children and grandchildren "for and during [their] natural lives * * * until all but one of them shall have deceased, when my Trustee shall convey * * to such survivor, discharged of all trust" all of said real estate. *Id.* at 244, 146 A. at 629. In *Colt*, the testator's sons, beneficiaries under the twenty-seventh clause, filed suit for the purpose of terminating the 27th Clause Trust. They claimed that

by the word "grandchildren," the testator intended to include any and all grandchildren, even those born after his death. This interpretation would render the 27th Clause Trust invalid as it would be a devise in violation of the rule against perpetuities because it was possible that more grandchildren would be born after the testator's death and the survivor of such grandchildren would not be determined within a life in being plus twenty-one years. The court held that through the twenty-seventh clause, the testator intended to preserve his homestead estate and his farm for his surviving son or grandchild. *Id.* at 247, 146 A. at 631. The four grandchildren alive at the testator's death, the court stated, were known to him and loved by him. *Id.* at 247, 146 A. at 630. In order to effectuate the intent of the testator and preserve the validity of the 27th Clause Trust, the court held that the word "grandchildren" in the twenty-seventh clause meant only those grandchildren living at the time of his death. *Id.* at 248, 146 A. at 631. This interpretation avoided any rule-against-perpetuities problem.

The *Colt* decision has an impact on the fact situation before us because in 1986 the next to last survivor of the testator's sons and grandchildren, alive at his death, died. That individual's death triggered the termination of the 27th Clause Trust and caused the Bristol real estate to be conveyed to Elizabeth Stansfield, the sole survivor. Because of the termination, surplus income is no longer paid out of the 27th Clause Trust, leaving the question regarding the distribution of Caldwell's 27th Clause Trust surplus income interest moot. The only question now before us with regard to 27th Clause Trust surplus income concerns that income accruing between the death of Caldwell in January, 1985, and the death of the next to last survivor of the testator's sons and grandchildren in 1986.

In *Industrial Trust Co. v. Wilson*, 61 R.I. 169, 200 A. 467 (1938) this court addressed the language in the twenty-eighth

4. The Industrial Trust Company was originally named trustee of the 27th and 28th Clause Trusts in the Will. Following a number of subsequent name changes, the trustee is now known as Fleet National Bank.

clause of the will which orders payment of net income from the remainder of testator's estate first to his two sons and his brother for their lives, then to "the surviving child or children of such deceased son or brother" for their lives. *Id.* at 173, 200 A. at 470. The specific issue considered by the court was whether three of Roswell's four children, namely Byron Colt, Caldwell Colt, and Melba Delmouzos, all born after the death of the testator, were entitled to their father's share of 28th Clause Trust net income as members of the class of surviving children of Roswell. The court found the relevant language of the twenty-eighth clause to be unambiguous and therefore found no room for employment of the rule against perpetuities as an aid to construction. *Id.* at 185, 200 A. at 475. It specifically declined to comment on the possibility of remoteness of any ultimate gift of principal under the clause. *Id.* at 174–75, 200 A. at 471. The *Wilson* court held that the above-named children of Roswell, born after the death of the testator, were entitled to share with Roswell's other child, Elizabeth Colt Wilson (now Elizabeth Stansfield), in the trust income that their father, if still living, would be receiving under the twenty-eighth clause. *Id.* at 185, 200 A. at 475. The court found its interpretation to be "consistent with the well-established rule that, where a gift is made to a class following an intervening life estate to a third person, membership in the class is determined at the period of distribution which in such a case is the expiration of the preceding life estate." *Id.* at 183, 200 A. at 475. It was the *Wilson* decision, then, that entitled Caldwell to a portion of his father's share of net income from the principal under the 28th Clause Trust and a proportional share of surplus income from the 27th Clause Trust as directed by the testator.

Drawing closer to the issue before us, this court was next faced with a fact situation that involved the death of Theodora Barrows, daughter of the testator's brother LeBaron, and the first of the class of second life tenants to die. *Industrial Trust Co. v. Flynn*, 74 R.I. 396, 60 A.2d 851 (1948). Theodora Barrows died leaving one son and three grandchildren; one grandchild was the child of a deceased daughter and two grandchildren were the children of a second deceased daughter. All of Theodora's children were born during the life of the testator, and her two daughters died intestate after LeBaron's death and during Theodora's lifetime. None of Theodora's grandchildren were born during the testator's lifetime. The *Flynn* court was concerned with the same language in the twenty-eighth clause that concerns us today although it was applied to the family of LeBaron, not Roswell Colt. That language states that "upon the decease of such child or children of my said sons and my said brother, as the same shall respectively happen, my Trustee shall convey, transfer and set over to the child or children of such deceased child or children, per stirpes and not per capita, his, her or their proportionate share of this trust estate, as an estate vested in fee simple, discharged of all trust." *Id.* at 401, 60 A.2d at 853.

The court found this language ambiguous but, after examining the intent of the testator as evidenced in the twenty-eighth clause as a whole, nevertheless reached a conclusion regarding the testator's intent without regard to the rule against perpetuities as a possible aid to construction. *See id.* at 408, 60 A.2d at 857. It found that rather than intending to make a gift to the second life tenants as a class, the testator intended to individualize his gifts of income and principal under the clause. *Id.* at 415, 60 A.2d at 860. The court discerned that the testator intended that the children of a deceased second life tenant should enjoy all the benefits that were given to their parents. Specifically, the *Flynn* court held that the testator's

"gifts of income for life to the second life tenants were to individual members of certain groups who were merely identified by a common description without cross remainders or joint tenancies among those groups or members thereof; that upon the death of each first life tenant the income from his particular share was given in equal shares to the surviving children of that first life tenant as individuals for and during their re-

spective lives; and that upon the death of each first life tenant, in this case LeBaron, the proportionate share of the principal of the trust, to the income of which each second life tenant individually was entitled for life, was then vested in interest individually and independently in the child, or in equal shares in the children, as the case may be, of such second life tenant; and upon the death of each second life tenant 'as the same shall respectively happen,' in this case Mrs. Barrows, a proportionate share of the principal, to the income of which she was entitled for life, vested in enjoyment in and was distributable to her children, *per stirpes* and not *per capita*, as an estate in fee simple free of all trust." *Id.* at 415–16, 60 A.2d at 860.

This conclusion, the court found, did not violate the rule against perpetuities and was in keeping with the general rule that where an ambiguity exists, the ambiguity should be resolved in favor of validating the gift and thereby preserving the intent of the testator. *Id.* at 413, 417, 60 A.2d at 859, 861; *see Colt v. Industrial Trust Co.,* 50 R.I. at 245–46, 146 A. at 630. The construction adopted by the court was not violative of the rule "because the remainder vested in interest *ex necessitate* within a life or lives in being and twenty-one years thereafter." *Flynn,* 74 R.I. at 417, 60 A.2d at 861. This holding regarding distributions under the 28th Clause Trust applied equally to distribution of surplus income under the 27th Clause Trust. *Id.* at 419, 60 A.2d at 862.

The method of distribution adopted in *Flynn* has been followed at the subsequent deaths of other second life tenants. After the *Flynn* decision, another second life tenant and daughter of LeBaron died leaving issue who were living at the death of their grandparent and first life tenant LeBaron. Likewise, a third second life tenant and daughter of Russell G. Colt, son of the testator, died leaving a son who was alive at the death of his grandfather and first life tenant Russell. Upon the deaths of their parents, these issue received, per stirpes, their second life tenant parents' respective shares of 27th Clause Trust sur-

plus income and 28th Clause Trust principal to the net income of which their parent was entitled during her lifetime.

The final decision of this court requiring our consideration in discussing the background to the present fact situation is *Industrial National Bank of Providence v. Morey,* 86 R.I. 15, 133 A.2d 724 (1957). *Morey* involved the death of Mary Colt Gross, daughter of LeBaron and first of the second life tenants to die without issue. In *Morey,* the court examined the following language in the twenty-eighth clause:

"And in case of failure of the limitations and objects of the preceding trust, that is to say, if either or both of my said sons or my said brother shall die leaving no child surviving, or if leaving child or children surviving, such last named child or children shall die leaving no child or children surviving him, her or them, as the case may be, then my Trustee shall convey, transfer and set over, discharged of all trust, the share or shares of said trust estate to which any such grandchild or grandchildren would have been entitled if living, to the person or persons who at the time of ascertaining such failure of the aforesaid objects of said trusts would have been my heir or heirs-at-law * * *." *Id.* at 17–18, 133 A.2d at 726.

The court found the testator's intent clear and unambiguous and held the gift over void as a perpetuity. *Id.* at 20, 133 A.2d at 727–28. The court reasoned that "it is equally clear that looking at this disposition at the time of the testator's death, as we must, there is a possibility that the gift to such specially described heirs would not vest within the period of a life or lives in being and twenty-one years thereafter." *Id.* at 20, 133 A.2d at 728. The court, therefore, ordered that the trustee pay over to the testator's estate, as intestate property, the share in the principal of the 28th Clause Trust to the net income of which Mary Colt Gross was entitled during her lifetime. Likewise, the 27th Clause Trust surplus net income to which Gross was entitled during her lifetime was to be paid over to the testator's estate as intes-

tate property. *Id.* at 22, 133 A.2d at 728–29.

According to the agreed statement of facts, subsequent to this court's opinion in *Morey,* two more second life tenants died without issue and the income to which they were entitled under the 27th and 28th Clause Trusts passed as intestate property of the testator. These intestate distributions increased the estate of Caldwell.[5] Following a review of the above discussed decisions of this court, the agreed statement of facts summarizes Caldwell's shares under the 27th and 28th Clause Trusts at the date of his death as follows:

"(1) the net income from a three-thirteenths ($^3/_{13}$) share of the principal held under the 28th Clause Trust, and (2) 13.425703% of the surplus income from the trust estate held under the 27th Clause Trust, of which 8.333333% (or a one-twelfth share) came to him under the terms of said Will, with the remaining 5.092370% coming to him as intestate estate of the testator either directly upon the respective deaths of [those second life tenants dying without issue] * * *, or indirectly as a one-third residuary legatee of his mother, Melba P. Colt, the widow of Roswell C. Colt, a first life tenant, said Melba P. Colt having died on February 28, 1970."

The parties before us appear to agree that the 5.092370% share of surplus income from the 27th Clause Trust, to which Caldwell was entitled during his lifetime, should now be paid from and after the death of Caldwell to his executor, since it was received by Caldwell during his life and came to him as intestate estate of the testator. The problem before us then is to discern which parties in interest are now entitled to Caldwell's 8.333333% share of surplus income under the 27th Clause Trust accruing between Caldwell's death and the termination of that trust and which parties are

entitled to Caldwell's share of net income under the 28th Clause Trust.[6]

Looking first to the intent of the testator we examine the language of the twenty-eighth clause previously quoted in this opinion and examined by this court in *Flynn.* Repeating that language here, the twenty-eighth clause instructs the trustee "upon the decease of such child or children of my said sons and my said brother, as the same shall respectively happen, * * * [to] convey, transfer and set over to the child or children of such deceased child or children, per stirpes and not per capita, his, her or their proportionate share of the trust estate, as an estate vested in fee simple, discharged of all trust." The *Flynn* court found this language to be unclear and ambiguous. *Flynn,* 74 R.I. at 408, 60 A.2d at 857. The ambiguity noted by the *Flynn* court, however, was whether the testator intended a gift to the surviving children of his deceased sons or brother as a class for life with the attendant right of survivorship among themselves or whether the testator intended individual gifts to those children distributable immediately upon the death of their parent. In choosing the latter intention after an examination of the entire clause, the *Flynn* court found it to be nonviolative of the rule against perpetuities and hence resolved the ambiguity to preserve the gift.

The parties before us argue no such ambiguity and in fact appear to agree on the intent of the testator. They agree that the testator, through the twenty-eighth clause, intended to devolve his property over three generations through the use of two consecutive series of life estates with a final gift over of principal to his great-grandchildren or to the grandchildren of his brother LeBaron. He intended that the children of the second life tenants should each receive a direct distribution of 28th Clause Trust principal and 27th Clause Trust surplus income based on the proportionate share of

---

5. After the agreed statement of facts was filed, a fourth second life tenant died without issue. The effect of his death on Caldwell's estate was not specified in the briefs.

6. Clause Twenty-seventh of the Will instructs that the 27th Clause Trust surplus " * * * income to apply as provided in the Twenty-eighth clause of this Will * * *." Our discussion of distribution under the twenty-eighth clause, applies equally therefore, to clause twenty-seven.

their second life tenant parent. The parties also agree that this intent of the testator should be carried out unless such distribution would violate a rule of law, namely the rule against perpetuities. The parties differ in the application and effect of the rule.

■ The orthodox rule against perpetuities prohibits the creation of future interests or estates which by possibility may not vest within a life or lives in being at the time of the testator's death plus twenty-one years. John C. Gray, *The Rule Against Perpetuities* 166 (2d ed. 1906); Restatement (Second) *Property* (Donative Transfers) Ch. 1 intro. note and § 1.1 (1983). The rule is designed to prevent restraints on the alienation of property that may be perpetual or unreasonably long, while permitting limited restraints within the period of the rule in recognition of the property owner's rights to use and devise his property. Restatement (Second) *Property* (Donative Transfers) pt. 1 at 5 (1983); 61 Am. Jur.2d *Perpetuities* § 7 at 14 (1981). It therefore prevents the tying up of property to the detriment of society. The rule against perpetuities is a rule of property law and not of construction and its strictures prevail over the intent of the testator. The only time the rule may be used to help in construing a will is when the language of the will is found to be ambiguous. *Flynn,* 74 R.I. at 408, 60 A.2d at 857. In such a case, if one construction might result in vesting the remainder at a time beyond a life or lives in being plus twenty-one years, and another construction would result in vesting the remainder within the time contemplated by the rule, courts will generally adopt the latter view. *Flynn,* 74 R.I. at 408, 60 A.2d at 857; *Colt,* 50 R.I. at 245–46, 146 A. at 630.

■ The orthodox rule against perpetuities requires that the possibility of the vesting of a gift be examined at the time of the testator's death. *Morey,* 86 R.I. at 20, 133 A.2d at 728. If by any conceivable combination of circumstances it is possible that the event upon which the future estate or interest is contingent may not occur within the period of the rule, or if there is any

room for uncertainty or doubt on the point, that future estate or interest is void. The orthodox rule then, is tested by possibilities, not by actualities.

The rule has been the subject of much criticism and debate by legal scholars and writers. *See* W. Leach, *Perpetuities in Perspective: Ending The Rule's Reign of Terror* 65 Harv.L.Rev. 721 (1952). The major criticism of the rule is that it often serves to totally defeat the intent of the testator by invalidating a gift due to remote contingencies based upon improbable happenings. *Id.* at 723.

■ In answer to these criticisms Rhode Island, among other states, has enacted a statute to modify the rule. General Laws 1956 (1984 Reenactment) § 34–11–38 modifies the rule against perpetuities by directing that "the period of perpetuities * * * be measured by actual rather than possible events." Our statute requires, however, that the possible measuring lives bear a causal relationship to the vesting or failure of an interest. If, after applying the rule as modified by the statute, a gifted interest is still violative of it, the statute directs that the interest be reformed "to approximate most closely the intention of the creator of the interest." Through this statute, our Legislature has adopted both the "wait-and-see" approach and the "cy pres doctrine" as reformation of the rule against perpetuities. Although the statute embodies this state's present method of application of the rule against perpetuities, unfortunately, the statute itself may not be retroactively applied in the case before us because, by its terms, it "shall not be construed to invalidate or modify the terms of any interest which would have been valid prior to May 17, 1983."

■ We believe § 34–11–38 is a codification of a policy employed by this court prior to the statutory adoption of rule-against-perpetuities reform by the Legislature. *See Lux v. Lux,* 109 R.I. 592, 601–02, 288 A.2d 701, 706–07 (1972) (judicial application of cy pres to validate distribution of trust corpus; court refused to accept fertile octogenarian rule of orthodox rule against perpetuities); *Industrial National*

*Bank of Rhode Island v. Barrett*, 101 R.I. 89, 100, 220 A.2d 517, 524 (1966) (court accepted reasoning that validated trust because it was "in line with the trend to obviate the technical harshness of the rule against perpetuities and decide cases on the substance of things"). In fact, although this court was given the opportunity to apply the orthodox rule against perpetuities to the Will on a number of occasions and thereby determine the validity of the remainder interests in the children of the afterborn grandchildren as in the case before us, it has chosen to postpone such consideration until the contingency actually arises. Instead, this court has limited its past examinations of the Will to the particular set of circumstances presented to it in each case. This approach is consistent with the wait-and-see philosophy of rule modification.

The facts of the case before us present a particularly appropriate situation in which to apply the rule in terms of "wait-and-see actualities" rather than "orthodox possibilities." There is no question that the property at issue in Caldwell's estate is now distributable in fee simple. The only question is who will receive the distribution. Notwithstanding the identity of the persons to inherit, the property will no longer be held unalienable; its transferability is no longer controlled. The purpose of the rule therefore, that of preventing lengthy restraints on the alienation of property, will be fulfilled at this time regardless of who we decide may inherit.

Applying the wait-and-see approach to the rule against perpetuities, we examine the vesting of an interest at the time the contingency upon which it depends occurs. If the facts as they exist at that time allow for vesting within a life or lives in being plus twenty-one years, the gift is valid and the various possibilities that may have prevented vesting when viewed at the death of the testator are irrelevant. Restatement (Second) *Property* (Donative Transfers) § 1.4 (1983); Note, *Understanding the Measuring Life in the Rule Against Perpetuities*, 1974 Wash. U.L.Q. 265, 287. Examining the facts, therefore, as they exist at the death of Caldwell rather than at the death of the testator, we must determine whether his shares vest in his children's possession within a life in being plus twenty-one years. This life in being must bear a causal relationship to the vesting of interests under the Will because although the orthodox rule against perpetuities defines a measuring life to be any life whatsoever in being at the death of the testator and requires no causal relationship, the wait-and-see doctrine limits the range of possible measuring lives by requiring that they bear a causal relationship to the vesting of the future interest in question. Note at 290; 61 Am.Jur.2d *Perpetuities* § 29 at 37 (1981). "The meaning of the causal relationship principle * * * encompasses every relationship that any validating life at common law bears to vesting. It embraces every person who, in the particular situation, can affect vesting." J. Dukeminier, *Perpetuities: The Measuring Lives*, 85 Col.L.Rev. 1648, 1648 (1985).

■ At the time of Caldwell's death, his sister Elizabeth Stansfield, and his cousin, Samuel Colt, were the only individuals still alive who were living at the death of the testator. Elizabeth is the only one of Roswell's four children who was alive at the testator's death, and, since the death of her cousin Samuel in August, 1986, is the sole survivor of the family members alive at the testator's death. She is thus a life in being and an acceptable measuring life. She is causally connected not only to the vesting of the remainder in her own children, but also to the life estate of her siblings and thus to the remainder in her sibling's children. If, for example, Elizabeth had predeceased her father Roswell, the income that Roswell had been receiving as a first life tenant would have been divided into thirds rather than fourths and paid to Melba, Caldwell, and Byron, Roswell's surviving children. Thus, the amount of Caldwell's share, and consequently the amounts of his children's shares, were dependent upon the survival of Elizabeth.

■ Since Elizabeth is still living today, it is clear that the remainder interests of Caldwell's children have vested within the

time period set by the rule against perpetuities. The testator's gift to them, therefore, is valid.

The representative of the estates of Russell G. Colt and his wife Gwendolyn argues that this court's decision in *Flynn* controls our choice of measuring lives in this case. The *Flynn* court was asked to decide whether the testator's gift to the second life tenants constituted a gift to the second life tenants as a class or whether the gift was separable and thereby demanding immediate distribution to the children of a second life tenant, per stirpes and not per capita, upon the death of such second life tenant. In choosing the latter interpretation, the *Flynn* court, consistent with prior interpretations of the Will, preserved the intent of the testator by preventing invalidation of the gift as a perpetuity through liberal interpretation. In its determination that the testator intended individual gifts to second life tenants rather than a class gift, the court arbitrarily chose the death of LeBaron, the first life tenant in the branch of the family under consideration by the court, as the point at which the gift to LeBaron's children and grandchildren vested. This extension, however, was not necessary to the resolution of the central issue in *Flynn* and is, therefore, dicta. The point of vesting chosen by the *Flynn* court does not dictate our consideration of a measuring life for the purpose of applying the rule against perpetuities to the fact situation before us. It does not preclude our choice of a different individual as a measuring life.

The case before us presents a different issue than that considered by the *Flynn* court. It takes us beyond the facts in *Flynn* because we are here asked to address whether the children of second life tenants, born after the death of their first life tenant grandparent, may inherit their second life tenant parent's share of the testator's estate. Consistent with this court's decision in *Wilson*, which held that the testator intended that the children of first life tenants born after his death were entitled to inherit their parent's share under the Will, we hold that the children of second life tenants in this case, born after the death of their first life tenant grand-

parent may also take under the Will as long as such gift is not void as a perpetuity. Again the gift in this instance is not violative of the rule against perpetuities because it has vested in possession at the expiration of the preceding life estate and within the life of Elizabeth Stansfield, a life in being and an appropriate measuring life.

Since we limit our holding to the circumstances before us, this decision does not determine the inheritance rights of Merika Delmouzos, daughter of one of Caldwell's surviving sisters. Consistent with our analysis in this and in prior cases, the parties must wait and examine the facts as they exist at the time Merika's interest may vest in possession at the death of her mother.

The parties also ask this court to determine the source or sources of payment for the expenses of this action. Because the litigation involves distributions under the 27th and 28th Clause Trusts, costs and fees should be allocated between both trusts in shares proportionate to the amount of principal remaining in both trusts. The expenses are necessary expenses of managing both trusts and, therefore, payable from the principal of both trusts. *See Industrial National Bank of Providence v. Colt*, 102 R.I. 672, 686–87, 233 A.2d 112, 120 (1967). All of the parties appear to agree with the payment ratio computed by the plaintiff that follows the procedure employed by the Superior Court in *Flynn* and *Morey*. Based upon the amount of principal remaining in each trust, the plaintiff has calculated that a 19:3 payment ratio be applied to the principal remaining in the 27th and 28th Clause Trusts, respectively. Pursuant to G.L. 1956 (1985 Reenactment) § 9–14–25 the Superior Court shall decide upon a "reasonable sum for expenses and on account of counsel fees * * * as [it] * * * shall deem proper," and allocate those expenses between both trusts on a proportionate basis.

This concludes our consideration of the questions certified to this court and the papers of this case are remanded to the Superior Court with our decision endorsed thereon.

SAMUEL P. COLT
D. 8/13/21

---

*RUSSELL G. COLT (FLT)
D. 7/8/60

*ROSWELL C. COLT (FLT)
D. 5/1/35

*LeBARON B. COLT (FLT)
D. 8/18/24

---

**Under RUSSELL G. COLT:**

*Samuel Colt (SLT)
D. 8/1/86

*Ethel Miglietta (SLT)
D. 5/22/77

  !John Miglietta
  B. 9/10/46

*John Colt (SLT)
D. 6/6/75

**Under ROSWELL C. COLT:**

*Elizabeth Stansfield (SLT)

  #Samuel Wilson
  B. 9/20/37

  #Dorothy Payne
  B. 7/29/39

  #Rodney Wilson
  B. 5/23/42

!Caldwell Colt (SLT)
D. 1/18/85

  #Samuel Colt
  B. 10/16/56

  #Julia Colt
  B. 6/13/60

!Melba Delmouzos (SLT)

  Merika Delmouzos
  B. 10/22/61

!Byron Colt (SLT)
D. 6/11/65

**Under LeBARON B. COLT:**

*Theodora Barrows (SLT)
D. 7/28/46

  *Theodora McCue
  B. pre-'24
  D. 2/14/34

  *Barbara Nightingale
  B. pre-'24
  D. 8/7/43

  *Edwin Barrows, Jr.
  B. pre-'24
  D. 8/23/60

*Mary Gross (SLT)
D. 6/11/54

*Elizabeth Anthony (SLT)
D. 10/14/65

  *LeBaron Anthony
  B. 9/6/16
  D. 7/16/82

  *S. Reed Anthony
  B. 10/30/12

---

* Alive at death of Testator
! Alive at death of First Life Tenant (FLT) only
# Alive at death of Second Life Tenant (SLT) only