INDUSTRIAL TRUST COMPANY, *Tr. vs.* THEODORA DEWOLF FLYNN *et al.*

AUGUST 9, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

398

FLYNN, C. J. This is a bill in equity brought by the trustee under the will of Samuel Pomeroy Colt, late of Bristol, Rhode Island, for the construction of certain portions of the twenty-seventh and twenty-eighth clauses thereof and for instructions relative to the trusts therein established. All persons having possible interests in the income or principal of these trusts were made respondents, all minors were represented by the guardians of their estates or by a duly appointed guardian *ad litem,* and a representative of contingent interests of persons not in being or not ascertainable was also appointed by the court. A decree *pro confesso* was entered against each respondent who failed to appear and file an answer, and the cause, being ready for hearing for final decree, was then certified to this court for determination under general laws 1938, chapter 545, §7.

The following material facts are not disputed. Samuel Pomeroy Colt, the testator, executed his will on December 28, 1917 and died on August 13, 1921. The will was duly probated. He was survived by two sons, Russell G. Colt and Roswell C. Colt, and a brother, LeBaron B. Colt, and they constitute the first life tenants of the residuary trust involved in the twenty-eighth clause.

Each of these first life tenants had a child or children living at the testator's death. Russell G. Colt, a son, had three such children, namely Samuel Colt, Ethel B. Miglietta, and John Drew Colt. Roswell C. Colt, the other son, had one such child, namely Elizabeth Colt Smith. Subsequently he married Melba P. Colt and had three other children, namely, Caldwell Colt, Byron Colt, and Melba Colt, all of whom were born after the testator's decease. LeBaron B. Colt, the testator's brother, died on August 18, 1924, and he was survived by three such children, Theodora L. Barrows, Mary L. Gross, and Elizabeth L. Anthony, all of whom were married.

The questions here involved arise because of the death on July 28, 1946 of said Theodora L. Barrows, one of the three daughters who survived LeBaron, and therefore one of the three second life tenants of his share. She was survived by a son, Edwin A. Barrows, Jr., and by Theodora DeWolf Flynn (only child of Theodora Barrows McCue, deceased daughter of Mrs. Barrows), and by Barbara DeWolf Nightingale and William Greene Nightingale, III (only children of Barbara Barrows Nightingale, the other deceased daughter of Mrs. Barrows). All Mrs. Barrows' children were born during the testator's lifetime, and her two daughters died intestate after LeBaron's decease and during their mother's lifetime. None of Mrs. Barrows' grandchildren were born during the testator's lifetime.

The bill of complaint seeks instructions primarily as to the disposition of Mrs. Barrows' share of the surplus income from the trust in clause Twenty-seventh and her share of income and a proportionate share of the principal under the residuary trust in clause Twenty-eighth of the will.

Clause Twenty-seventh of the will established a special trust for the maintenance of the homestead and farm in Bristol "for and during the natural lives of said children and grandchildren until all but one of them shall have deceased," at which time said real estate will be conveyed to such last survivor. Certain other realty and one half of the residue of his estate is also placed in trust to provide income, if necessary for such maintenance; and then comes the provision here involved, viz., "any surplus of such income to apply as provided in the Twenty-eighth clause of this Will with reference to the income of the residuary Estate to be held by my Trustee. And upon the termination of the trust hereinbefore expressed concerning my real estate in said Town of Bristol, said one-half of my residuary estate shall fall in and become a part of the other half of my residuary estate to be divided and

distributed or held as provided in clause Twenty-eighth of this Will."

Clause Twenty-eighth of the will reads as follows:

"All the rest, residue and remainder of my estate, real and personal, (meaning and intending thereby the one-half of my residuary estate not set apart as provided in the preceding Twenty-seventh section of this Will), of which I shall die seized and possessed, or to which I shall be in any manner entitled, including any estate of which I shall have the power of appointment by will I give, devise and bequeath to said Industrial Trust Company and its successors in trust for the uses and purposes hereinafter expressed and declared of and concerning the same. That is to say: my Trustee shall make an inventory of all said rest, residue and remainder real and personal estate, and shall place values on the same and the respective parts thereof to the best of its skill and understanding; and my Trustee shall then divide said residuary estate into six equal parts or shares, each of which shall contain an equal proportion as near as may be of all bonds, shares of capital stock in corporations and other securities included in said residuary estate. One of said six parts or shares of said residuary estate shall be conveyed, transferred and made over, discharged of all trust, to my son Russell Griswold Colt, and one of said parts or shares shall be conveyed, transferred and made over, discharged of all trust, to my son Roswell Christopher Colt. One of said six parts or shares shall be conveyed, transferred and made over, discharged of all trust, to my brother LeBaron Bradford Colt. The remaining three parts or shares of said residuary estate shall be held by my Trustee upon the trusts hereinafter expressed. My trustee shall pay over semi-annually or oftener in its discretion the net income arising therefrom in equal shares to my two sons, Russell Griswold Colt and Roswell Christopher Colt and my brother LeBaron Bradford Colt, for and during the terms of their natural lives; and upon the decease of any of them should such deceased son or brother survive me, otherwise from and after my decease, my Trustee shall pay to the surviving child

or children of such deceased son or brother for and during the term of his, her or their natural life or lives the share of said net income to which such deceased son or brother would be entitled if living. *And upon the decease of such child or children of my said sons and my said brother, as the same shall respectively happen, my Trustee shall convey, transfer and set over to the child or children of such deceased child or children, per stirpes and not per capita, his, her or their proportionate share of this trust estate, as an estate vested in fee simple, discharged of all trust.* And in case of failure of the limitations and objects of the preceding trust, that is to say, if either or both of my said sons or my said brother shall die leaving no child surviving, or if leaving child or children surviving, such last named child or children shall die leaving no child or children surviving him, her or them, as the case may be, then my Trustee shall convey, transfer and set over, discharged of all trust, the share or shares of said trust estate to which any such grandchild or grandchildren would have been entitled if living, to the person or persons who at the time of ascertaining such failure of the aforesaid objects of said trusts would have been my heir or heirs-at-law according to the statutes of descent of real estate then in force in the State of Rhode Island, if I had at that time died intestate, seized and possessed of said share or shares." (italics ours)

The questions propounded for our consideration are as follows: "(1) What persons, and in what proportions as between them, are now entitled to the one-ninth share in the trust estate under Clause Twenty-eighth of the testator's will, to the net income from which Theodora L. Barrows was entitled during her lifetime, under a proper construction of the provisions of said will disposing of said share upon her death; (2) Whether said provisions as construed in the answer to the first question violate the Rule against Perpetuities and are therefore void; (3) If said provisions are held to be void, what persons, and in what proportions as between them, are now entitled

to said share as property as to which the testator died intestate; (4) What persons, and in what proportions as between them, are now entitled to the one-ninth share in the surplus net income from the trust estate under clause Twenty-seventh of the testator's will, to which said Theodora L. Barrows was entitled during her lifetime, under a proper construction of the provisions of said will disposing of said share upon her death; (5) Whether said provisions as construed in the answer to the fourth question violate the rule against perpetuities and are therefore void; (6) If said provisions are held to be void, what persons, and in what proportions as between them, are now entitled to said share in said surplus net income as property as to which the testator died intestate * * *."

Twelve attorneys representing various interests have filed briefs which approach the present problems from the viewpoints which would be most beneficial to their respective clients. Their proposed constructions contemplate almost every conceivable kind of remainder, vested and contingent; different views as to the time when such remainder vested in interest and in possession; and other differences as to whether the gifts were in the entirety to a class as joint tenants, or to a series of separable classes and subclasses, or to individuals without cross remainders or joint tenancies; and further differences as to whether and to what extent such gifts may violate the rule against perpetuities.

However, upon the issue of the proper construction of the twenty-eighth clause, which is at the base of their first divergencies, the attorneys seem to have divided generally into two groups. One group of five advocates a construction that would continue the trust of LeBaron's share as an entirety to his surviving children as a class for life with the attendant right of survivorship among themselves, and thus would postpone the distribution of any part of the principal until the death of *all* LeBaron's three surviving children. The other group advocates a construction or

constructions that would result in an immediate distribution to the children of Mrs. Barrows, *per stirpes* and not *per capita,* of their proportionate share of the principal.

Clause Twenty-eighth, and in particular the language relating to the gift of income to the second life tenants, was construed by this court in *Industrial Trust Co.* v. *Wilson,* 61 R. I. 169. In that case we held substantially that the words providing a gift of income for life "to the surviving child or children of such deceased son or brother" were clear; that they meant the children surviving at the decease of a first life tenant rather than at the death of the testator; and also that they included all such surviving children of a first life tenant, whether born before or after the testator's death.

We were not then called upon to decide the manner in which such surviving children would take and hold their equal shares in the income as between themselves; and we were not asked and did not decide whether the testator intended a technical class gift of income to the surviving children of each first life tenant as joint tenants or a gift of income to them in equal shares as individuals who were merely identified by a common description; nor when the gifts of principal vested in interest and in possession. Moreover, we limited our opinion to the language which made a gift of *income* to the second life tenants of each one-third share and we specifically excluded any help from or reference to the other language used in making the gifts of principal. That question, we stated, would not come up for consideration until the decease of one of the surviving children who was receiving the income as a second life tenant.

That event has now happened. Theodora L. Barrows, one of the three surviving children of LeBaron B. Colt, deceased on July 28, 1946, and the trustee has asked for instructions as to the disposition of the share in the net income which was formerly payable to her for life and of the proportionate share in the principal that is given

to her children by way of remainder in fee simple. This involves an independent consideration of the language of clause Twenty-eighth to determine whether the testator intended gifts to the surviving children of first life tenants as a class or as individuals without cross remainders or joint tenancies. .

The representatives of interests which stem from the testator's two sons, sometimes referred to herein as the Colt heirs, and Mrs. Gross unite in contending that the language of this clause is apt and unequivocal; that beyond any doubt it makes a gift of income of LeBaron's share only as an entirety to his surviving children as members of a designated class with the attribute of survivorship among themselves; that therefore such income, a portion of which Mrs. Barrows was entitled to receive during her life, is payable on her death to her sisters, Mrs. Gross and Mrs. Anthony, as the surviving members of that class, as joint tenants; and that upon the death of the last survivor of *all* LeBaron's children the proportionate amount of the trust principal will be distributable, if not contrary to the rule against perpetuities, to LeBaron's grandchildren *per stirpes* and not *per capita*.

They point out that the words "such child or children" in the direction to distribute "And upon the decease of such child or children of my said sons and my said brother" are words of reference which go back to "the surviving child or children" in the previous sentence, and clearly refer to the several groups or classes as such of the children of the testator's sons and brother and not to the individuals in any group; that the phrase ordering distribution on the death of such child or children of the sons and brother, "as the same shall respectively happen," likewise refers only to the death of an entire group or class and not to the death of the individual members thereof; and that the use of the words "per stirpes and not per capita," as well as the plural "children" and "their" in the order to distribute to the children of such child or

*children* "his, her or *their* proportionate share" are adequately explainable only by the construction that the testator intended gifts of income and principal to the designated child or children as several classes and not to them as individuals. (italics ours)

Since the direction to make distribution upon the decease of the surviving child or children of the first life tenants "as the same shall respectively happen" refers according to their construction, only to entire groups as such, they suggest in their brief that such phrase be omitted and that the direction to distribute be, read as if written "my Trustee shall pay to the surviving children of such deceased brother for and during the term of their natural lives the share of said net income to which such deceased brother would be entitled if living. And upon the decease of such children of my said brother, my trustee shall convey, transfer and set over to the children of such deceased children, *per stirpes* and not per capita, their proportionate share of this trust estate."

They urge that such paraphrase is the only fair and clear interpretation of the testator's intent and that other parts of the context lead to the same result. For example, they point out that in referring to the death of his sons and brother in the first sentence the testator says: "upon the decease of any of them," but that he did not order a distribution on the death of *any* of the second life tenants. Moreover, they say that the distribution "per stirpes and not per capita," and the references in the ultimate gift over in the last sentence of the clause to the plural "children" and "them" in the provision that if any of the surviving second life tenants "shall die leaving no child or children surviving him, her or them, as the case may be," are without significance unless their construction is adopted. Hence they urge that nothing in the will or in this clause militates against their proposed construction, but tends rather to confirm it. They conclude that the text makes it unequivocally clear that "the testator

was thinking primarily of a group or class of surviving children of each son and brother, upon the death of *all* of whom a distribution should be made"; that the language used requires a continuance of the trust of LeBaron's share as an entirety and the payment of net income for life to the members of the class of children surviving LeBaron until the last survivor of them dies, at which time distribution of a proportionate amount of the trust principal, if not contrary to law, will be made. (italics ours)

On the other hand representatives of the interests which stem from the testator's brother LeBaron, with the exception of Mrs. Gross, contend primarily that this clause read as a whole in its usual sense clearly expresses an intent to give definite and separable shares in the income for life to those individuals who came within the general description used to identify them, namely, the surviving child or children of each first life tenant; that these shares vested in interest on the death of the testator or, in the alternative, on the death of each first life tenant, in this case LeBaron; and therefore that on the death of Mrs. Barrows, one of the second life tenants of income from LeBaron's share, her children were entitled to receive, *per stirpes* and not *per capita*, "his, her or their proportionate share" of the principal as an estate in fee simple, free of all trust.

They point out that the language used to make the gift of income must now be considered together with the language which not only makes a gift of principal but also expressly directs distribution upon the decease of the designated second life tenants "as the same shall respectively happen * * *." They claim that the addition of the phrase "as the same shall respectively happen" is most important and should not be omitted; and that it accomplishes clearly an individualization of the gifts of income and principal as fully as if distribution had been ordered upon the decease of *any* of the first life tenants. They urge that the testator could not have intended to give the

income to second life tenants as a class, because that would prevent the execution of his order in the next sentence to make successive distributions upon the decease of the second life tenants "as the same shall respectively happen * * *."

According to them this intent is further shown by the order to distribute to the child or children of such second life tenants "his, her or their *proportionate share* of this trust estate, *as an estate vested in fee simple* * * *." (italics ours) They further say that the use of the words "his, her or their" is entirely natural and means only a recognition of the fact that a second life tenant might have a son or a daughter or both, and hence the reference to "his, her or their" and to "child or children"; and they urge that the order of distribution of *proportionate shares* to the children of the second life tenants, *per stirpes* and not *per capita,* is used in its usual sense to indicate a taking by individual children by representation or from the root. They conclude that the children of Mrs. Barrows already had a proportionate share of the principal of the trust estate which vested in interest on the death of the testator or, at the latest, on LeBaron's death, and that such interest was vested in enjoyment by the language of the express direction to distribute to them, *per stirpes* and not *per capita,* upon the death of their mother, Mrs. Barrows.

As a secondary argument they urge that if for any reason their first construction is not found to be as clear as they contend, then the language in any event cannot fairly be said to exclude their construction, and therefore they argue that the language of clause Twenty-eighth must be held to be ambiguous. In such circumstances they urge that we consider the effect of the rule against perpetuities and adopt their construction because *ex necessitate* it will vest the remainder in the case of the share of Mrs. Barrows and her children within a life or lives in being and twenty-one years, whereas the construction urged by the Colt heirs and Mrs. Gross would jeopardize,

if not defeat entirely, the express intent of the testator because it might vest too remotely and thus violate the rule against perpetuities.

Our duty is to ascertain from the language of the will, if possible, the intent of the testator, and to give effect thereto if it is not contrary to positive law. That is the cardinal rule in construing wills. *Industrial Trust Co.* v. *Harrison,* 67 R. I. 131; *Washington Trust Co.* v. *Arnold,* 69 R. I. 121; *Rhode Island Hospital Trust Co.* v. *Thomas,* 73 R. I. 277, and cases cited. Accordingly in the first instance we should strive to find such intent from the will apart from and regardless of the rule against perpetuities and its possible effect, because the latter is not a rule of construction but is one of positive law. *Colt* v. *Industrial Trust Co.,* 50 R. I. 242. The only time when such rule may be used to help in construing a will is where the language of the will is found to be really ambiguous. Then if one construction might result in vesting the remainder at a time beyond a life or lives in being and twenty-one years, and another reasonable construction would result in vesting the remainder within the time contemplated by the rule against perpetuities, courts generally will adopt the latter view, unless it would substantially destroy a clearly expressed intent of the testator. *Colt* v. *Industrial Trust Co., supra.*

In the instant case, therefore, we first must consider clause Twenty-eighth without regard to the rule against perpetuities or its possible effect. Accordingly we have examined the language of that clause in the light of various arguments of counsel and we cannot say that such language is clear and unambiguous. Some things favor one construction over the other and *vice versa.* When read in a particular way, especially if the language of the gift of income is considered alone or with certain emphasis on some later words or phrases, or with an assumption as to the meaning of some qualifying expression, it seems to be consistent with an intent to make

a gift of the income to the surviving child or children of each first life tenant as a class, and with such a class gift it is possible to imply the attribute of survivorship among the members of each class. See 1 Jarman on Wills (6th ed.) 262; *Rhode Island Hospital Trust Co.* v. *Swan Point Cemetery,* 62 R. I. 83; *Rhode Island Hospital Trust Co.* v. *Thomas, supra.* A strong and plausible argument has been made for this construction by the Colt heirs and Mrs. Gross.

On the other hand, when the language of the gifts of income and principal are considered together, the whole seems to be consistent with another reasonable construction and plan, namely, that the gifts of income and principal are not intended and made as entireties to the several classes as such, but are first broken down into separable parts which are definitely individualized as to interest and enjoyment by the language directing distribution, on the decease of the second life tenants "as the same shall respectively happen," of the remaindermen's proportionate share of the principal, *per stirpes* and not *per capita,* as a fee simple estate free of all trust.

As to the reasonableness of this latter construction, apart from the rule against perpetuities, several considerations may be noted. A reading of the clause as a whole, giving the words their usual and natural meaning, seems to conform readily to this construction. The testator first directs a division of his entire residuary estate into two parts, placing one of them in trust under the twenty-seventh clause and the other in trust under the twenty-eighth clause. In the first part of clause Twenty-eighth he directs the trustee to again divide and separate the entire residuary estate under that clause into "six equal parts or shares * * *." "Parts or shares" are thus used synonymously. One such part or share is given to each of his sons and brother, free of all trust. The remaining three parts or shares are not then reassembled as one entirety. They are set up as three separate trusts, one for

each of said sons and brother, who constitute the first life tenants of their respective shares under this clause. By this division LeBaron was entitled to receive for life the income from a definite one-third share of the trust.

Up to that point the testator clearly was not thinking of class gifts or entireties, but had in mind separate, fractional shares to individuals without intending or expressing any cross remainders or joint tenancies among them. And no other language in the will as cited shows *conclusively* that, notwithstanding this clear intent to break down his residuary estate into fractional or separable shares or parts, he nevertheless intended to change such attitude of mind and make aggregate gifts of income and principal in the entirety to the several groups or classes as such of second life tenants and their children. The later language seems to be at least equally consistent with the general plan of the testator to continue breaking down the residuary estate under the twenty-eighth clause into fractional and separate shares or parts which were intended to be distributed as fee simple estates in equal shares to the children of each second life tenant.

According to this view the formula is clear and is substantially the same as if the testator had given the income from a one-third share to each of his sons and brother for life, as the first life tenants; and then for life in equal shares to as many children as would survive each first life tenant, as the second life tenants; and then to distribute a proportionate share of the principal to the child or children, as the case may be, of each second life tenant. In other words, upon the death of the testator the share of each first life tenant, in this case LeBaron, was expressly fixed as a one-third part of the residuary trust under clause Twenty-eighth, and it could not be enlarged or diminished by any other event. Then upon LeBaron's death, the income from such one-third share is given in equal shares to as many of his children as would survive him, for their lives.

There were three such children of LeBaron, all of whom were living during the testator's lifetime and at LeBaron's death; and thereafter there could be no more. Hence the formula for computing the number and size of the shares is clear and is tantamount to subdividing LeBaron's share of income into three further separate and fractional parts, thus giving a one-ninth share of the income to each of his three surviving children for life. This result follows necessarily from the essential formula found in the express terms of the will. Consequently the number of shares and subshares, and the size or amount of each, are certain, independent, and mathematically fixed, and they vested in interest at the death of LeBaron.

Further, the gift of principal is *not* to the *surviving* child or children as is the case in the gift of income to the second life tenants, but it is to the "child or children" of such second life tenants, *per stirpes* and not *per capita;* and the gift of "his, her or their proportionate share of this trust estate, as an estate vested in fee simple" reasonably refers to the distributees and is vested in possession, as directed, upon the death of the second life tenants "as the same shall *respectively* happen * * *." (italics ours) According to Webster's New International Dictionary (2d ed.) 1946, "respectively" means relating to particular persons or things, each to each, and is frequently used as a synonym for "distributively." See also Words and Phrases, where it is used as "severally."

Moreover, it is not usual to refer to the death of a whole group in such language, and elsewhere the testator used different terms for that purpose. When he clearly intended to prolong a trust to the last survivor of members of a designated group, he did not leave it to such an implication. On the contrary, as in clause Twenty-seventh, he used expressly more apt words such as: "until all but one of them shall have deceased * * *." And again in the twenty-sixth clause he gave an estate in New York to his son Russell and his wife "for and during the term of

their natural lives, and for and during the natural life of the survivor of them."

Under this construction the words "per stirpes and not per capita" can be interpreted in their usual sense or, if necessary, given a meaning to exclude contingencies as applied in *Rhode Island Hospital Trust Co.* v. *Shaw,* 50 R. I. 78. Furthermore, in the ultimate gift over the plural words "children" and "them" are explainable if they are considered in their context with the additional phrase "as the case may be * * *." This qualifying phrase seems to be consistent with the pattern and the language used previously where the distribution was ordered upon the death of the second life tenants "as the same shall respectively happen," and supports the conclusion that the testator did not intend class gifts as such but was thinking in terms of individual shares which, in the natural order of expectancy, would be successively distributed on the death of each second life tenant.

It can be argued that the language of the ultimate gift over strengthens the construction proposed by the Colt heirs. However, it should be noted that this gift is separate; that it depends upon other contingencies than the gift of principal in the trust; and that the word "surviving," which in the gift over qualifies "child or children," does not appear in the gift and distribution of principal in the trust to the "child or children" of the second life tenants. This apparent conflict, therefore, adds a ground to the claim that the language as a whole is ambiguous. Moreover the construction offered by LeBaron's descendants generally would conform to the rule of construction which favors early vesting, and also would seem to provide more equitable results in keeping with the general pattern and expressed intent of the testator as to LeBaron's share and its distribution.

These are some of the considerations that can be gathered from a reading of the language of the clause as a whole, and in our opinion they make it impossible

to say that the construction offered by the Colt heirs and Mrs. Gross is the only construction that has a reasonable basis in the language of the will. In the circumstances we think it is entirely reasonable to conclude that the language of clause Twenty-eighth, in respect to the issue now being considered, is fairly open to different constructions and is therefore ambiguous.

Accordingly in keeping with the well-established exception, as previously recognized and stated in *Colt* v. *Industrial Trust Co.*, *supra*, we should re-examine the language of clause Twenty-eighth with aid from the rule against perpetuities. That rule requires that it appear at the testator's death that the interest *must* vest, if at all, within a life or lives in being and twenty-one years thereafter. *Rhode Island Hospital Trust Co.* v. *Granger*, 51 R. I. 401; *Goffe* v. *Goffe*, 37 R. I. 542; 554. Gray, Rule against Perpetuities (4th ed.) §201.

The Colt heirs and Mrs. Gross, adhering to their proposed construction, assert that, looking prospectively from the time of the testator's death, it was possible in contemplation of law that LeBaron might have another child born after the testator's death because, for the purpose of the rule against perpetuities, the possibility of issue is never considered extinct regardless of the age of the person. *Rhode Island Hospital Trust Co.* v. *Granger, supra.* Gray, Rule against Perpetuities, §215. In their view such afterborn child would be a member of the class of LeBaron's surviving children and might possibly live to be the last survivor of them. Since in that event such child would be entitled to the entire income and no distribution of principal could take place until his death, then the remainder, if contingent, might possibly vest beyond a life or lives in being and twenty-one years, and so would violate the rule against perpetuities.

They further argue that if the gift of income is to LeBaron's surviving children as a class and the principal does not vest until the death of the last survivor thereof,

then if the gift is void as to any possible member of the class it is void as to all, notwithstanding that the other members of that class might have been born within a life or lives in being and twenty-one years thereafter. In support of these conclusions they rely on cases of which the following are examples: *Leake* v. *Robinson*, 2 Meriv. 363; *Greenwood* v. *Roberts*, 15 Beav. 92; *Pearks* v. *Moseley*, 5 App. Cas. 714; *Sears* v. *Russell*, 8 Gray 86; *Feeney's Estate*, 293 Pa. 273; *Lovering* v. *Lovering*, 129 Mass. 97, and others.

On the other hand one of the constructions advocated by LeBaron's descendants, with the exception of Mrs. Gross, would individualize the gifts of income and principal and make them independent and separable without cross remainders or joint tenancies, so that the remainder must vest in interest not later than LeBaron's death. Under that view the remainder would vest in interest on LeBaron's death and hence would necessarily vest in interest within a life or lives in being and twenty-one years thereafter; and only the enjoyment of each share would be postponed until the death of the particular second life tenant thereof.

Applying their construction, Mrs. Barrows was born within the life of the testator and she survived the testator's brother LeBaron. She deceased leaving a son, and also a child of a deceased daughter, and two children of another deceased daughter. All these were living during the life of both the testator and LeBaron and they were capable upon LeBaron's death of taking their independent, separable and proportionate shares in his one-third part of the trust. Upon LeBaron's death the number and size or amount of their respective shares were definitely fixed and individualized so that their interests must necessarily vest within a life in being, namely, that of LeBaron. No joint tenancies or cross remainders as between the individuals in any of these gifts are mentioned in the will and the framework thereof discloses an intent to keep the gifts, so

far as possible, within the lines of designated descendants. None of these shares is subject to increase or diminution by what might happen in the distribution of other shares after the death of other second life tenants. These advocates rely upon the severability of independent shares as in cases like the following: *Cattlin* v. *Brown,* 11 Hare 372; *Griffith* v. *Pownall,* 13 Sim. 393; *Wilson* v. *Wilson,* 4 Jur. (N.S.) 1076; *In re Coulman,* 30 Ch.D. 186; *Re Seely,* 149 L.T. 462; *Bowerman* v. *Taylor,* 126 Md. 203; *Kern's Estate,* 296 Pa. 348; *Hills* v. *Simonds,* 125 Mass. 536; *Dorr* v. *Lovering,* 147 Mass. 530; *Minot* v. *Doggett,* 190 Mass. 435. See also Gray, Rule against Perpetuities (4th ed.) §§391-395.1; 1 Jarman on Wills (7th ed.) 308-313; 2 Simes on Future Interests, §528, p. 404.

In these circumstances, following the example of courts generally we adopt that construction which will not violate the requirements of the rule against perpetuities. Therefore we conclude that the testator intended to individualize his gifts of income and principal under this clause; that his gifts of income for life to the second life tenants were to individual members of certain groups who were merely identified by a common description without cross remainders or joint tenancies among those groups or members thereof; that upon the death of each first life tenant the income from his particular share was given in equal shares to the surviving children of that first life tenant as individuals for and during their respective lives; and that upon the death of each first life tenant, in this case LeBaron, the proportionate share of the principal of the trust, to the income of which each second life tenant individually was entitled for life, was then vested in interest individually and independently in the child, or in equal shares in the children, as the case may be, of such second life tenant; and upon the death of each second life tenant "as the same shall respectively happen," in this case Mrs. Barrows, a proportionate share of the principal, to the income of which she was entitled for life, vested

in enjoyment in and was distributable to her children, *per stirpes* and not *per capita,* as an estate in fee simple free of all trust.

In the instant case, therefore, our answer to question (1) is that the proportionate or one-ninth share of the trust principal, to the net income of which Theodora L. Barrows was entitled during her lifetime, is now distributable as follows: one-third thereof to the estate of Theodora Barrows McCue, her deceased daughter; one-third thereof to her son Edwin A. Barrows, Jr.; and one-third thereof to the estate of Barbara DeWolf Nightingale, her other deceased daughter.

In connection with this question it has been represented that certain realty was a part of the trust of LeBaron's share; that it has been sold since LeBaron's death; and that the proceeds are a part of the trusts under clauses Twenty-seventh and Twenty-eighth. Hence it is argued by one group that there was an equitable conversion and that the share in the proceeds now payable to the estate of the deceased children of Mrs. Barrows should be paid and descend as personal property, if any such children, that is, the remaindermen, died intestate.

On the other hand it is argued that there is no express direction in the will that the trustee *must* convert such realty; that the only reference to the powers of the trustee for such conversion is to be found in the twenty-ninth clause; that this merely authorizes but does not direct a sale of realty, and is not mandatory; and that in the absence of a mandatory direction in the will to convert realty, either expressly stated or necessarily implied, no equitable conversion ordinarily takes place.

We agree with the latter view and in our opinion the case is governed by what was said concerning equitable conversion in *Gaboriault* v. *Gaboriault,* 69 R. I. 245, and *Skinner* v. *Brunsen,* 69 R. I. 159. Hence we conclude that no equitable conversion was intended or directed as to these shares. If any part of the share of the trust prin-

cipal now payable to the respective estates of Theodora Barrows McCue or Barbara Barrows Nightingale, deceased daughters of Mrs. Barrows, includes proceeds from the sale of realty that was a part of the share of the trust principal that vested in them on the death of LeBaron, then it will retain its character as realty *pro tanto* in the distribution now to be made according to the will.

In our opinion the interpretation of the will which we have reached as above stated does not violate the rule against perpetuities, because the remainder vested in interest *ex necessitate* within a life or lives in being and twenty-one years thereafter. Hence our answer to question (2) is in the negative, and in view of these two answers it is unnecessary to consider question (3).

Questions (4), (5) and (6) relate to the surplus income from clause Twenty-seventh. It appears to be conceded that no distribution of principal held in trust under this clause can be made at this time nor can it be made "until all but one of them (the testator's children and grandchildren) shall have deceased." The provisions of this clause require substantially that the income from the trust set up therein shall be used for the maintenance of the homestead and farm in Bristol and "any surplus of such income to apply as provided in the Twenty-eighth clause of this Will with reference to the income of the residuary Estate to be held by my Trustee. And upon the termination of the trust hereinbefore expressed concerning my real estate in said Town of Bristol, said one-half of my residuary estate shall fall in and become a part of the other half of my residuary estate to be divided and distributed or held as provided in clause Twenty-eighth of this Will."

The Colt heirs, in keeping with their proposed construction of the twenty-eighth clause, insist that this surplus income is payable to the first life tenants in equal shares, and that upon the death of each first life tenant his share of income is payable to his surviving children as a class with the attendant right of survivorship. Therefore they

urge that such surplus income is payable now to Mrs. Gross and Mrs. Anthony as joint tenants. It is also argued by some that in any event such income is payable only in the manner in which *income* is distributed under the twenty-eighth clause.

On the other hand it is argued that the testator intended merely to adopt, in distributing such surplus income, the pattern of the twenty-eighth clause, and that such surplus income to all intents and purposes would follow in accordance with the construction made of clause Twenty-eighth. In other words, the surplus income from clause Twenty-seventh would be payable as it accrues to all intents and purposes as if it were income from the trust under clause Twenty-eighth; that upon the death of a second life tenant, in this case Mrs. Barrows, the proportionate share of the principal, to the surplus income from which she was entitled during her life, had vested in interest in her children upon the death of LeBaron. Hence on her death such income would follow the proportionate share of principal and now be payable to the children of Mrs. Barrows as in the twenty-eighth clause.

There being no provision in either clause Twenty-seventh or Twenty-eighth for accumulating income, and the intent of the testator appearing to direct a distribution of *all* income in each clause, we are inclined to the view that the surplus income should follow in all respects the disposition that would take place if such income from clause Twenty-seventh were considered as being part of the trust in clause Twenty-eighth to be successively distributed as therein specified. It seems to us that the testator intended that the children of a deceased second life tenant should enjoy all the benefits that were given to their parent, because the shares were definite and severable and there was no cross remainder or joint tenancy expressed in the gifts.

While the principal of the trust of one half the residuary estate that is established in the twenty-seventh clause is not distributable at the present time, yet, according to the

direction in the last sentence of clause Twenty-seventh, the principal of that trust ultimately must fall in and become a part of the residuary trust in clause Twenty-eighth and must be divided and distributed as provided therein. The proportionate share of the trust principal under clause Twenty-eighth, to the income of which Mrs. Barrows was entitled for her life, is held to have vested in interest in the children of Mrs. Barrows upon the death of LeBaron, the first life tenant. Therefore since the principal of the above-mentioned trust under clause Twenty-seventh ultimately must become and be distributable as a part of the trust in clause Twenty-eighth, our opinion is that the children of Mrs. Barrows, who are entitled to take their proportionate share of the principal of the trust of LeBaron's share under clause Twenty-eighth, are legally and equitably entitled to receive their proportionate share of the surplus income from the trust in clause Twenty-seventh, as the income ordinarily follows the remainder interest in the absence of contrary intention or provision.

Therefore the answer to question (4) is that the distribution of such surplus income from the trust in clause Twenty-seventh will be made to the persons and in the manner and proportions as are set forth in the answer to question (1). Our answer to question (5) is that upon this construction there is no violation of the rule against perpetuities as to the provisions now being considered; and in view of these answers to questions (4) and (5) it becomes unnecessary to consider question (6), which is based upon the contingency of a construction that would hold these dispositions to be void.

The parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

CONDON, J., dissenting. My disagreement with the court's construction consists in a difference of opinion as to the meaning of the language which the testator used in the twenty-eighth clause to create the second life beneficiaries'

interests in the income and the remainders over in fee at the expiration of such life estates, and also in providing for a gift over to his heirs in the event of a failure of such remainders. With due deference to the opinion of my brethren, I think that such language does not submit to two equally reasonable constructions. In my opinion it is neither ambiguous nor doubtful but clearly expresses the intention of the testator. That such intention, if thus clearly apparent, is in part unlawful does not justify a resort to some subordinate rule of construction to avoid the consequences of such illegality. After long and serious consideration I have been unable to satisfy my mind that resort to such a rule is necessary to a fair construction of the twenty-eighth clause.

That clause disposes of the testator's residuary estate among his sons and brother, naming them, and their grandchildren living at the expiration of the intervening second life estates. The testator effects such disposition by directing his trustee to divide such residue into six equal parts or shares and thereafter to pay over discharged of all trusts one such share to each of his sons and his brother. The trustee is further directed to hold the remaining three shares and thereafter, semiannually or oftener, to pay over to each of his said sons and brother the income thereof in equal shares for and during the *"terms"* of their natural lives, and further, upon the decease of *"any of them"* to pay to the surviving child or children of such deceased son or brother for and during the *"term"* of his, her or their natural life or lives, in proportion to their number, the share of the net income to which such deceased son or brother would be entitled if living.

Successive life interests in "each" of those three shares are thus created but by markedly different language in the creation of the first life interests as compared with the second. The first life tenants or beneficiaries are specifically named; to each is given a separate and distinct share of income; and the gifts are for the *"terms"* of their

natural lives. At the decease of *"any of them"* the second life tenants receive such deceased's share of income. However, such second life tenants, if more than one, are not to receive the income for the *terms* of their lives, but for and during the *term* of their natural lives. In other words, if there is more than one such tenant the estate in the income is for the *term* of their natural lives. Such tenants thus receive as a class constituting the surviving children of each deceased first life tenant such life tenant's share of income until the survivor of the class has deceased.

There is a nice distinction in this contrasting language which discloses the hand of a skilled draftsman in the law. In the first instance the intention was to integrate and segregate several independent shares of income to certain individuals by name, and the testator quite correctly expressed such gifts of income distributively to give clear and unequivocal effect to such intention. In the second instance, however, the intention was not the same. Clearly it was to transfer, upon the decease of the first life tenant, his share of income to a class whose members could not be known to the testator before the decease of the first life tenant. In fact until that time it could not be known even whether the class itself would be in existence at the decease of any of such first life tenants. To give effect to such intention and in a sense to negative the idea of a gift of independent, integrated shares of the deceased first life tenant's share of income the language used was thus not distributive but collective, so to speak, showing that the first life tenant's share of income was to remain intact but each second life tenant was to be paid a portion thereof proportionate to the number of such tenants. That is to say, the testator intended, and gave appropriate testamentary expression to his intention, to make a gift of such share of income to the second life tenants as a class with the right of survivorship necessarily attached thereto.

Applying the principles of such a gift to the circumstances which have arisen as a result of the decease of

Mrs. Barrows, one of the second life tenants of LeBaron Bradford Colt's share of income, it is clear that Mrs. Barrows' sisters, Mrs. Gross and Mrs. Anthony, the other second life tenants of such share, are now entitled to receive all of such income in equal shares for and during the term of their natural lives. Under this view the time has not yet arrived for a construction of the gift over of the *corpus* in fee to determine whether or not it violates the rule against perpetuities. However, since the court's opinion on the view there adopted necessarily considers and disposes of that question, I see no objection to expressing the opinion that, under the construction I have made of the gift of income to the second life tenants, the gift of the *corpus* violates the rule, because at the death of the testator there was a possibility that such gift would not vest within a life or lives in being and twenty-one years thereafter.

According to the testamentary language of the gift over of the *corpus* of the trust it is "to the child or children" of the second life tenants, that is, to the *grandchildren* of the first life tenant, as the testator, himself, later described them in the last sentence of the twenty-eighth clause. There is no provision for grandchildren of the second life tenants and there is no necessity apparent from the will that would justify construing "children" to include also such "grandchildren." Indeed, the whole last sentence of the clause in which provision is made for a gift to testator's heirs, as of a particular time, in the event of failure of the gift over seems to be predicated upon the idea that unless there is a *child or children* of deceased second life tenants living at the expiration of the second life estate in the income there is a failure of the gift over.

The pertinent language of that sentence is as follows: "And in case of failure of the limitations and objects of the preceding trust, that is to say, if either or both of my said sons or my said brother shall die leaving no child surviving, or if leaving child or children surviving, such last

named child or children shall die leaving no *child* or *children* surviving him, her or them, as the case may be, then my Trustee shall * * *." Obviously, the testator must have considered that he had already provided that the gift over was to go to the *child* or *children* of the second life tenants who survived the expiration of the second life estate. If there were no such *children* who could answer to that description when the gift of the *corpus* was to take effect, then there was a failure of the gift over. Later on in the clause he refers to such gift as follows: "the share or shares of said trust estate to which any such grandchild or grandchildren would have been entitled *if living* * * *." (italics mine)

I think that a careful reading together of the sentence which sets out the gift over and the succeeding sentence which provides for a failure of such gift will indisputably show that the testator's intention was to annex futurity to the gift of the *corpus* by providing that only such persons could take who answered the description of *child* or *children* of the second life tenants at the expiration of that life estate. Of course, in thus postponing the vesting of the gift the testator violated the rule against perpetuities, although I believe that he mistakenly thought he had kept within it by limiting the gift over to grandchildren of his sons and brother.

In that connection it is significant that the selfsame vice which inheres in the gift over of the *corpus* is also present in his gift to his heirs in the event of failure of the gift over. In such event the testamentary language is that the trustee shall transfer and set over "to the person or persons who at the time of ascertaining such failure of the aforesaid objects of said trusts would have been my heir or heirs-at-law * * *." Here, as far as the gift over is concerned, there is a possibility that such special heirs might not be determinable within a life in being and twenty-one years thereafter. Consequently, in my view, this provision would also fail for illegality and the gift over would pass

as intestate property to testator's legal heirs as of the date of his death.

*Edwards & Angell, Walter A. Edwards, Frederick Lippitt,* of counsel, for complainant.

*Hinckley, Allen, Tillinghast & Wheeler, Stuart H. Tucker, Bruce M. Docherty,* for respondent Russell G. Colt.

*Greenough, Lyman & Cross, William B. Greenough, R. Gordon Scott, Jr.,* for respondent Mary L. Gross.

*Edward W. Day,* for respondent Melba P. Colt individually and as administratrix, *Gardner, Day & Sawyer,* of counsel.

*Charles R. Haslam,* guardian ad litem of respondents Caldwell Colt, Byron Colt, Melba Colt; *Stephen F. Mullen,* of counsel.

*Edward L. Leahy,* for respondent Elizabeth Colt Wilson.

*George Hurley, John W. Moakler, Jr.,* for respondents Edwin A. Barrows, Jr., Elizabeth L. Anthony, S. Reed Anthony and LeBaron Colt Anthony.

*Swan, Keeney & Smith, Frank H. Swan, Jr.,* of counsel, for respondent Thomas W. McCue.

*Horace L. Weller,* for respondent William G. Nightingale, Jr. and as guardian ad litem of respondents Barbara DeWolf Nightingale and William Greene Nightingale, 3rd, Silas Reed Anthony, Jr., Magdelaine Richmond Anthony, Bryan Anthony and Robert Weeks Anthony.

*Sayles Gorham,* guardian ad litem of respondents John Drew Miglietta, Samuel Colt Wilson, Dorothy Wilson and Rodney Chipman Wilson.

*Fred B. Perkins,* guardian ad litem of respondent Theodora DeWolf Flynn, and representative of contingent interests; *Perkins, Higgins & McCabe, Fred B. Perkins, Eugene V. Higgins,* of counsel.

*James O. McManus, Joseph W. Grimes,* for respondent Joseph W. Grimes.